No. 20.—MARGARET RILEY, adm'x of William Riley, deceased, plaintiff in error, *vs.* LEWIS L. GRIFFIN, GEO. W. ADAMS and others, defendants.

[1.] A possession which is the result of ignorance, inadvertence, misapprehension or mistake, will not work a disseizin.

[2.] Marked trees, as actually run, must control the line, which courses and distances would indicate.

[3.] If nothing exists to control the call for courses and distances, the land must be bounded by the courses and distances of the grant, according to the Magnetic Meridian: but courses and distances must yield to natural objects.

[4.] All lands are supposed to be actually surveyed; and the intention of the grant is, to convey the land according to that actual survey.

[5.] If marked trees and marked corners are found, distances must be lengthened or shortened, and courses varied so as to conform to those objects.

[6.] Where the calls of a deed or other instrument, are for natural, as well as known artificial objects, both courses and distances, when inconsistent, must be disregarded. And this rule is supposed to prevail, in most of the States of this Union.

[7.] Whenever a natural boundary is called for in a grant or deed, the line

is to determine at it: however wide of the course called for, it may be, or however short, or beyond the distance specified.

[8.] Whenever it can be proved that there was a line actually run by the surveyor, or was marked, and a corner made, the party claiming under the grant or deed, shall hold accordingly, notwithstanding a mistaken descripiton of the land in the grant or deed.

[9.] When the lines or courses of an adjoining tract are called for in a deed or grant, the lines shall be extended to them, without regard to distances, provided these lines and courses be sufficiently established.

[10.] When there are no natural boundaries called for, no marked trees or courses to be found, nor the places where they once stood, ascertained and identified by evidence; or where no lines or courses of an adjacent tract are called for, in all such cases, Courts are of necessity confined to the courses and distances described in the grant or deed.

[11.] Courses and distances occupy the lowest, instead of the highest grade, in the scale of evidence, as to the identification of land.

[12.] Any natural object, and the more prominent and permanent the object, the more controlling as a *locator*, when distinctly called for and satisfactorily proved, becomes a land-mark not to be rejected, because the certainty which it affords, excludes the probability of mistake.

[13.] Courses and distances, depending for their correctness on a great variety of circumstances, are constantly liable to be incorrect; difference in the instrument used, and in the care of surveyors and their assistants, lead to different results.

[14.] In ascertaining boundaries, the locations of the original surveyor, so far as they can be found, are to be resorted to; and where they vary from the proprietor's plan, the locations actually made, will control the plan.

[15.] Whenever, in a conveyance, the deed refers to monuments, actually erected as the boundaries of the land, it is well settled that these monuments must prevail, whatever mistakes the deed may contain, as to courses and distances.

[16.] Courses and distances are pointers and guides, rather to ascertain the natural objects of boundaries.

[17.] Where a given line is exceeded in a grant, according to the courses and distances, evidence may be given of long occupation under it, to prove the boundaries.

[18.] Boundaries and courses may be proved by hearsay, from the actual necessity of the case.

[19.] Where a line has been run and agreed on by the co-terminous proprietors, and acquiesced in and possession held to it, for eighteen or twenty years, the parties and those claiming under them, are bound by it, no matter when, nor by whom, the line was run.

Ejectment, in Bibb Superior Court.    Tried before Judge Powers, May Term, 1854.

This action was brought by the defendants in error, against the plaintiff in error, to recover a lot of land in the County of Bibb.

The plaintiffs in the action, introduced a grant from the State to Lewis L. Griffin, one of the lessors of the plaintiff, dated in 1836, to fractional Lot No. 3, in said county, and introduced testimony, showing that the grant covered the premises in dispute, and that defendant was in possession, at the time of bringing the writ.

Defendant introduced a deed from Willis Wilder to O. H. Prince, dated in 1835, and a deed from Prince to Wm. Riley, her intestate, dated in 1845, for part of fractional Lot No. 2, Macon Reserve.   Defendant introduced testimony, going to show that this deed covered the premises in dispute, (the lots adjoining) and also to show possession and claim of ownership, since 1836.

Defendant also introduced Warren B. Riley, the son of intestate, whose testimony was as follows:

"I have known the premises in dispute, since 1835 or 1836. My father was in possession of the premises, since 1835 or 1836, first as the agent of Maj. O. H. Prince, and after the death of Prince, he bought the land at Prince's sale, and remained in possession until his death; and his widow and administratrix has been in possession ever since, and is now.

During the lifetime of Prince, father always held possession as his property, using it as such; and after he bought it, used it as his own ever since, cultivating it and exercising acts of ownership over it, as his own.

I know the lines well; I know the line is the old original line; have frequently seen the old blazes on the trees, which had all the appearance of the original Surveyor's mark.    The owners of the adjoining lands set it up as the original line, and were governed by it, and no dispute about it until Adams bought the adjoining land.

If this land is not covered by the deeds from Wilder to Prince, and from Prince's administrator, (W. Poe) to Wm. Riley, then there is no land, whatever, that can be claimed under the deeds.

All the parties acquiesced in agreeing to the line, as fixed and known, until Adams bought, and then Brantly, (Adams' father-in-law,) made a fuss about the lines, in a Justice's Court. Riley was in possession of the premises in dispute, occupying it and using it as his own, when Adams bought fractional Lot No. three, which they claim to cover the place sued for".

After argument, the Court charged the Jury as follows:

This is a question of boundary. If you believe, from the evidence, that the premises in dispute are covered by the grant from the State to Lewis L. Griffin, then you will find for the plaintiff.

And if you believe, from the evidence, that defendant went into possession of the premises in dispute, under a mistaken apprehension, as to the real boundary, when, in fact, the premises were not covered by his deed, possession and user of it, as his own, under such misapprehension, for seven years, does not confer title, as against the true owner; and so, if you believe that plaintiff's grant covers the premises in dispute, you will find for plaintiff; otherwise, you will find for defendant.

Defendant's Counsel requested the Court to charge the Jury, that if Riley, and those under whom he claims, had been in the actual possession of the premises in dispute, for more than 7 years before suit brought, claiming it as his own, by himself and those under whom he claimed, and cultivating it and exercising acts of ownership over it—

That such possession, under the case made by the evidence, (if the Jury believed the testimony,) conferred a good title in defendant, and the Jury would find for defendant, if they believed the evidence, as to the possession. The Court refused so to charge, but did charge, that a purchase of Lot No. 2, and going into possession of Lot No. 3, conferred no title to No. 3; and 7 years' open, adverse possession of No. 3, did not convey title to No. 3, against the true owner, because not *bona*

*fide*, under claim of right, and adverse to the true owner. The party making such a mistake, does so at his peril—if such mistake, in your opinion, from the testimony, was made.

The Jury found, for the plaintiff, the premises in dispute.

Which said charge, and refusals to charge, defendant, by her Counsel, then and there excepted, and now assign the same for error.

Stubbs & Hill; Whittle, for plaintiffs in error.

Rutherford; Poe; Nisbet & Poe, for defendants.

*By the Court.*—Lumpkin, J. delivering the opinion.

[1.] We recognize the doctrine, that a possession which is the result of ignorance, inadvertence, misapprehension, or, in other words, mistake, will not work a disseizin—as, for instance, A has a grant to Lot No. 2; he is a stranger in the country, and calls upon some one residing in the vicinity of his land, who points out No. 3 instead of No. 2. A, acting upon this mistake, and not intending to occupy any other land than that which his grant covers, enters upon No. 3 and lives on it as his own for more than seven years. An occupancy, under such circumstances, would not, we apprehend, constitute adverse possession. *Brown vs. Gray*, (3 *Greenleaf's R.* 126.)

It is the *intention* to claim title which makes the possession of the holder adverse; and this is the doctrine upon which the decision in every case proceeds. If it be clear, therefore, that there is no such intention, there can be no pretence of an adverse possession. (*Angell on Limit.* 402, 412.) If one be the owner of a tract of land, and at the same time the agent of the owner of an adjoining tract, he cannot avail himself of the Statute, to support his title to a part of the land of his principal, of which he had taken possession upon a misapprehension of the boundary. (*Cornegis vs. Carley*, (3 *Watts Rep.* 280.)

Whether there be any evidence to justify the charge, that

xvi–19

the defendant's occupancy, in this case, may have been the result of mistake, is somewhat questionable.

But there is another portion of the charge, which requires more consideration. The Court instructed the Jury, that if Griffin's grant covered the premises in dispute, then the verdict must be for the plaintiff.

Is this proposition necessarily correct? We think not.

Let us refer, for a moment, to the testimony of young Riley and Jonathan Wilder. Warren B. Riley swears, that he has known the premises in dispute since 1835 or 1836. His father has been in possession since that time, first, as the agent of Major O. H. Prince, and afterwards, in his own right—he having become the purchaser of the property, when sold as the estate of Major Prince, by Col. Poe, the administrator. That either as agent of Prince, or in his own right, he had always held the land, exercising acts of ownership over it, by cultivating it, &c. This witness testifies, that he knows the lines well, and that the line to which his father claimed, was the old original line. He has frequently seen the old blazes and trees which had all the appearance of the original Surveyor's marks. That the owners of the adjoining lands set it up, as the original line, and were governed by it, and there was no dispute about it, until Adams bought the adjoining land. He further stated, that all the parties, that is, those residing on the contiguous tracts, acquiesced in the line as fixed, until Adams bought; and then Brantley, Adam's father-in-law, made a fuss about the line in a Justice's Court.

Jonathan Wilder swore that he acted as the agent of his uncle, Willis Wilder, who owned the land before Major Prince bought it. That at the time it was sold, the blazes made by the Surveyor who run the land, were plain on the trees; and that he followed the original marks. That Riley's fence is nearly on the line as run round by witness. That it is a little over at the corner, as well as he can recollect, judging from his eye and from memory; subsequent examination has confirmed him in this opinion. He knows he is not mistaken as to the lines, because he followed the original Surveyor's marks, then fresh

and plain on the trees, which were then standing, very few, if any, having been cut down.  Prince and Riley, together, have been in possession of the land, for the last eighteen or twenty years, claiming it as their own, under Willis Wilder.  There never was any dispute about the boundary, while witness controlled it, as the agent of his uncle.  Witness has known the place, ever since the original survey was made, and before that time; has often seen the original Surveyor's marks, and could trace the original lines by them, and did so.

[2.] Now, it would seem, according to the proof, that when Lot No. 2 was originally surveyed, the lines may not have been run straight, according to courses and distances.  But still, if the Surveyor marked these as the true lines, it is quite clear that the owner of No. 2 will hold to these boundaries.  Marked trees, or the line, as actually run, must control the line which courses and distances would indicate.

[3.] If nothing exists to control the call for course and distance, the land must be bounded by the courses and distances of the grant, according to the Magnetic Meridian; for it is the practice, undoubtedly, of Surveyors, to express, in their plots and certificates of survey, the courses which are designated by the needle.  But it is a general principle, that the course and distance must yield to natural objects called for in the grant.

[4.] All lands are supposed to be actually surveyed; and the intention of the grant is, to convey the land, according to that actual survey.

[5.] Consequently, if marked trees and marked corners be found, distances must be lengthened or shortened, and courses varied, so as to conform to these objects.  *McIver's Lesse vs. Walker,* (9 *Cr. R.* 173.)

[6.] Where the calls of a deed or other instrument, are for natural, as well as known artificial objects, both courses and distances, when inconsistent, must be disregarded.  And this rule, says Mr. Justice *Washington*, is supposed to prevail in most of the States.  *McPherson vs. Foster,* (4 *Wash. C. C. Rep.* 15.)

[7.] Whenever a natural boundary is called for in a grant

or deed, the line is to determine at it, however wide of the course called for it may be, or however short, or beyond the distance specified.

[8.] And whenever it can be proved that there was a line actually run by the surveyor, was marked and a corner made, the party claiming under the grant or deed, shall hold accordingly, notwithstanding a mistaken description of the land in the grant or deed.

[9.] When the lines or courses of an adjoining tract, are called for in a deed or grant, the lines shall be extended to them, without regard to distance, provided these lines and courses be sufficiently established.

[10.] Where there are no natural boundaries called for—no marked trees or corners to be found, nor the places where they once stood, ascertained and identified by evidence; or where no lines or courses of an adjacent tract are called for—in all such cases, Courts are, of necessity, confined to the courses and distances prescribed in the grant or deed; for however fallacious such guides may be, there are none other left for the location. *Cherry vs. Slade's Adm'r*, (3 *Mur. R.* 82.)

The foregoing rules, Chief Justice *Taylor* remarked, had grown out of the peculiar exigencies of the country, and were moulded by experience, to meet the demands of justice.

[11.] And thus, it will be seen that courses and distances occupy the lowest grade, instead of the highest, in the scale of evidence, as to the identity of land.

[12.] And it is reasonable that this should be so ; for any natural object, when called for distinctly, and satisfactorily proved—and the more prominent and permanent the object, the more controlling as a *locator*—becomes a landmark not to be rejected, because the certainty which it affords, excludes the probability of mistake :

[13.] While course and distance, depending, for their correctness, on a great variety of circumstances, are constantly liable to be incorrect. Difference in the instrument used, and in the care of Surveyors and their assistants, lead to different results. (*Lessee of McCay vs. Gallway*, 3 *Ham.* 282. *Thorn-*

*berry vs. Churchill and . Wife*, 4 *Monroe's Ken. R.* 32. *Mc-Neill vs. Massey*, 3 *Hawk. R.* 91. *Beard's Lessee vs. Tullot*, 1 *Cook*, 142. *Preston's Heirs vs. Benman*, 6 *Wheat.* 58.)

*This* doctrine is found scattered, broadcast, throughout the authorities ; and I had supposed to be too well understood and established, to require to be discussed at this day.

[14.] In *Brewer vs. Gay*, (3 *Greenleaf's R.* 126,) it was held, that in ascertaining the boundaries of lots of land, where a township has been laid out, the locations of the original Surveyor, so far as they can be found, are to be resorted to ; and where they vary from the proprietor's plan, the locations actually made will control the plan.

[15.] So, in *Dodge vs. Smith*, (2 *N. Hamp. R.* 303,) the Supreme Court say, "whenever, in a conveyance, the deed refers to monuments actually erected, as the boundaries of the land, it is well settled that those monuments must prevail, whatever mistakes the deed may contain, as to the courses and distances. The same principle was decided in *Brand vs. Dawny*, (20 *Marten's Lon. Rep.* 159.)

[16.] In *Doe vs. Paine & Sawyer*, (4 *Hawk's N. Rep.* 64,) the Court refer to courses and distances, as pointers or guides merely, to ascertain the natural objects of boundary.

[17.] So, also, it has been held, that where a given line is exceeded in a grant, according to the courses and distances, evidence may be received, of long occupation under it, to prove the boundaries. (*Makepeace vs. Bancroft*, 12 *Mass. R.* 469. *Sargent vs. Town*, 10 *Mass. Rep.* 303. *Baker vs. Sanderson*, 3 *Pick. R.* 354. *Livingston vs. Ten Brocek*, 16 *Johns. R.* 23.) *Vide Davies' Abrid. of Am. L.* vol. 3, *p.* 307, where some of the early cases decided in Massachusetts, upon this subject, are collected.

[18.] And, as landmarks are frequently formed of perishable materials, which pass away with the generation in which they are made ; and are often destroyed, as in the case before the Court, by the improvement of the country and other causes, the boundary and corners may be proved by hearsay, from the necessity of the case. (*Nicholls vs. Parker*, 14 *East.* 331.

12 *East.* 62.   1 *M. & S.* 679.   1 *T. R.* 466.   5 *T. R.* 26. 2 *Ves.* 512.   6 *Peters,* 341.   4 *Day's Conn. R.* 265.   1 *Harris & McHenry,* 84, 368, 531.   2 *Hayw. R.* 349.   1 *Yates,* 28.   6 *Binney,* 59.)

So then, notwithstanding Mr. Wood run out Lot No. 3, according to the courses and distances designated in the plot accompanying the grant, and conceding that the lines, thus run, would cover the premises in dispute ; still, if the testimony of Wilder and Riley be true, as to the original lines of Lot No. 2, actually run and marked by the Surveyor, as a question of law, the plaintiff was not entitled to recover, nor were the Jury bound so to find.

[19.] Again : Suppose the line sworn to, is not that which was marked by the original Surveyor ; still, if it were agreed on by the coterminous proprietors, and acquiesced in, and possession to it held for eighteen or twenty years, the parties, and those claiming under them, would be bound by it, no matter when nor by whom the line was run and chopped.   (*Brown vs. McKinney,* 9 *Wharton's R.* 567.   *Burrell vs. Burrell,* 11 *Mass. R.* 296.)

There is a small piece of ground which stands in this predicament ; it is included in Riley's fence, but outside of the old boundary line.   That being so, the title to this parcel of ground will not depend on the actual line run, as proven by the witnesses, because it is not included in it ; still, it is inclosed by Riley's fence.   Here, then, is *possessio pedis.*   If this fence has been built seven years, then this strip of land will be covered by actual occupancy ; otherwise, the plaintiff's right to that will not have been lost or taken away.

Judgment reversed.