No. 35.—JOHN DOE *ex dem.* JOHN KEEL *et al.* plaintiffs in error, *vs.* RICHARD ROE, casual ejector, and NOEL PACE, tenant, &c. defendants.

[1.] Unless the weight of evidence strongly preponderates against the verdict, a new trial will not be granted.

[2.] The doctrine in *Riley vs. Griffin*, (16 *Ga. R.* 141,) that "a possession which is the result of ignorance, inadvertence, misapprehension or mistake," re-affirmed.

[3.] Will not Equity, in such case, decree compensation for improvements, where they exceed the value of the rent, and the mistake is mutual? *Quere.*

[4.] Where the plaintiff has no title, an error or omission of the Court, which goes to the weakness only of the defendant's title, is no ground for a new trial.

Ejectment, in Calhoun Superior Court. Tried before Judge ALLEN, May Term, 1856.

The heirs at law of John Keel brought their action of ejectment against Noel Pace, the tenant in possession, to recover lots of land Nos. 210 and 231, in the 3d district of originally Early, now Calhoun County, containing two hundred and fifty acres, and for *mesne* profits. Pending the suit, John Pace, the person under whom Noel Pace claimed, came in, and by order, was made a co-defendant. The case came up for trial in the Court below on the appeal, and a verdict was found for defendants.

Plaintiff's Counsel then moved the Court to set aside the verdict, and grant a new trial on the following grounds:

1st. Because the Jury found contrary to evidence and the weight of evidence.

2d. Because the Jury found contrary to law and evidence.

3d. Because the Court erred in refusing to charge the Jury as requested in writing by the plaintiffs, that if John Keel bought lot 210 at Sheriff's sale and took possession of lot 231 in 1831, and continued in possession until his death in 1844, clearing and improving it, and claiming it as 210, and

Doe *et al. vs:* Roe *et al.*

had not disposed of it at his death, he had a good title to it, and his heirs are entitled to recover it, no matter what the number is.

4th. Because instead of charging the above, the Court erred in charging the Jury "that the Statute of Limitations cannot be set up to aid a possession taken through mistake, ignorance or inadvertence; and if the Jury believe that old John Keel took possession of the lot of land No. 231, believing it to be 210, when, in truth, it is not, the Statute of Limitations will not ripen such possession into a statutory title.

5th. Because the Court erred in admitting the testimony of Malacha Jones, in this : that it shows a paper under which defendant claims title, and which was testamentary and could not convey title to Jordan Keel, unless executed in the presence of three witnesses, and regularly admitted to proof and record by the Court of Ordinary; and to the admission of which, plaintiff objected on this ground, and on the ground that it was the same paper testified to by John Colly; and which testimony showed it to be a testamentary paper; and that the paper itself could not be admitted if present; and much less could its contents be proved to set up title in Jordan Keel. The Court holding that the evidence should be admitted to ascertain what the paper was, the Court charging the Jury that if the paper was to take effect at the death of John Keel, and conveyed no present interest to Jordan Keel, it was a testamentary paper, and should be disregarded by the Jury.

6th. Because the Court erred in charging the Jury, that whether the contents of the last paper testified to by the witness be a deed or will, is a question of fact for the Jury to determine, under the instructions given by the Court to the Jury as to the law.

7th. Because the Court erred in charging the Jury, that no length of time in the possession of the land by the tenant exercising acts of ownership and claiming title, if the party took possession of one number, believing it to be another number, no matter what his claim of title to the number which he

supposed he was taking possession of, such possession would not ripen into a statutory title; which motion for a new trial the Court over-ruled, and Counsel for plaintiffs excepted, and assigned the same as error.

## BRIEF OF TESTIMONY.

JOHN COLLY testified, that he knows the lot of land No. 210, according to the plan of the district, as submitted to him and certified by the Surveyor General, and that Noel Pace, the defendant, was in possession of it on the 24th April, 1854; that John Keel took possession of it in 1831; built houses, cleared and cultivated land on it, and used and claimed it as his own; that the yearly rent, since defendant took possession of it, is worth seventy-five dollars per year; that he is not certain, but thinks Pace, defendant, took possession in 1847, but is not certain whether it was that year or not; that John Keel was in possession from 1831 till his death in 1844; never heard or knew of any adverse claim to it during all that time.

Cross-examined: Said that he saw, in 1841 or 1842, No. 231 on a tree on the land; and that he thought defendant, Pace, went into possession in 1847 in time to make a crop, but was not certain as to the year; that he saw a deed from John Keel to Jordan Keel at the death of John Keel, and at his house, conveying No. 210, at his death, to Elizabeth Keel during her life, and at her death to Jordan Keel; that Malacha Jones and Ezekiel Pierce were subscribing witnesses to the paper; that he never saw the paper before or since that time; that he heard a conversation between John Pace and Jordan Keel after the death of John Keel, in which Pace told Keel that he had a good title, and he would recover it; and that he, Jordan Keel, had better give it up, as he could recover it and rent, and ruin him : and on re-examination, he stated that he heard John Pace say, when he showed No. 231 on a tree, that it must be a mistake, and that it was Keel's land; that witness' father owned 208, and witness 209, east

of his father; and that the land settled by John Keel, and on which he lived, lies east of 209, and according to the plan of the district, is 210; that it was always so received and acknowledged, until after the death of John Keel, by owners of adjoining lands in the neighborhood, generally, until John Pace set up a claim to it as lot No. 231; that he exchanged lands with Jordan Keel, and took his deed to 210—lot which he took as 210, on the representation of John Pace and Lang, lay in range north of the Keel old place, and joining corner-ways with 209; that it was his opinion that the Keel old place was 210 up to the time John Pace and Lang told him that it was not, and so far as he knows, was so generally understood; that Jordan Keel, when he gave up the place, said he was not able to stand the law-suit and pay probable rent, and the other heirs would not help him.

JOSEPH S. YOU sworn, says, that he purchased the land from John Pace, and went into it in January, 1848, while Jordan Keel was still in possession; that he failed to pay Pace for the land, and paid him something like two hundred dollars rent, and that the rent has been worth, annually, one hundred dollars; that it was the place known as the Keel old place; that Mrs. Elizabeth Keel resided on said lot after the death of John Keel, until her death; and that at her death, or rather before Jordan Keel went into possession of said lot, and remained until he left it.

The plaintiff then introduced the Sheriff's deed by H. H. Acre to John Keel, for lot No. 210, in the 3d district of then Baker County, dated 5th October, 1830, as color of title on which to support his statutory title.

Plaintiff also introduced the plan of the third district of formerly Early County, certified by the Surveyor General, showing that 210 lies immediately east of 209, owned by John Colly, and rested his case.

The defendant then introduced a grant to Stephen Carpenter to lot No. 231, in the 3d district of Early County, dated 17th December, 1835.

Depositions of D. CORKER: That Stephen Carpenter died on 27th August, 1819, leaving a wife, Susan Carpenter, a widow, pregnant, and who gave birth to a son, Stephen P. Carpenter, 16th November, 1819, and died 1st September, 1821.

Depositions of DUDLY SNEED, proving the signature of deed by Leaston Sneed to John Pace to be in the hand-writing of Leaston Sneed, and Leaston Sneed married Susan Carpenter, the widow of Stephen Carpenter; she had one child a year or two after; Sneed and Mrs. Carpenter were married before the child died, as he thinks; child not exceeding three years old at his death; child died after the death of Stephen Carpenter, and the marriage of his mother with L. Sneed, who was brother to witness, and who is dead.

MALACHA JONES testified, that he wrote and witnessed a deed of gift from John Keel to Jordan Keel, sometime between the years 1838 and 1841, conveying to the said Jordan Keel the tract of land on which the said John Keel lived at that time; said deed was made and executed in the store of John Keel, William Keel and William G. Pierce, pretty late at night; deed to take effect after the death of John Keel, and his wife, Elizabeth Keel; Elizabeth Keel; John Keel's wife, was not to be dispossessed of the land during her life; but at her death, Jordan Keel was to have possession; there was no other witness signed the deed but himself; but John Keel said, at the time, that he would see Esquire Colly or Esquire Ezekiel Pierce and get one of them to witness it officially. The reason why he wished the deed executed secretly was, that he was fearful that his other children would be hurt about it; and that he intended making it up to them in other property.

Cross-examined: The deed was made to Jordan Keel, and not to Elizabeth Keel, and was not to take effect until after the death of Elizabeth Keel.

JAMES H. VARNY testified, that he is a land surveyor, and was four years County Surveyor of Randolph County, and has practiced land surveying for fifteen years, occasionally;

*Doe et al. vs. Roc et al.*

was called on by John Pace to survey a portion of the 3d district of now Calhoun County; commenced at the corner of lots No. 9 and 10, on the line of formerly Randolph County, now Terrel, and ran south, to the south-west corner lot 250, on which Noel Pace now lives; he sought to determine by said survey where lots of land 210 and 231 were situated, and which will be shown annexed to his answers; he came to the result by making the survey as before stated; does not know that the original Surveyor of the district platted it wrongly; but believes that the situation and size of lots 129 and 152 is the cause of lot 210 not lying east of 209, and lot 231 not lying east of 232; that so far as he surveyed, believes the lots of land in the 3d district are numbered right, though not situated right, on account of lots 129 and 152, as before stated; the size of these lots did not put anything wrong, so far as he could ascertain, on the east side of the line which he surveyed; believes the place east of where John Colly now lives, known as the Keel old place, is 231.

Cross-examined, says: Made the survey at the instance of John Pace; had no plan of the district before him at the time of the survey, except one he drew himself; was not present with original Surveyor; does not know the original plat is wrong, but knows some of the lots are too large, and not situated agreeable to the plan of said district; none of the plaintiffs present at the survey; he now resides in Terrell County, and is not the County Surveyor.

Defendant introduced deed of Leaston Sneed to John Pace for lot 231, dated 29th October, 1835, witnessed by John Keel and Levi Timmons; and a deed from Jordan Keel to John Colly for lot 210, in third district, dated 8th July, 1848; and a written instrument under seal, as follows:

GEORGIA, BAKER COUNTY:

This is to certify that I have long since surrendered any claim I may have had to lot No. 231, in the 3d district of

Baker County to John Pace of said county; and that his present possession is in his own right, and not subordinate to mine ; and that surrender has been made upon a good and valuable consideration to me, to-wit: his superior right and title.   In witness whereof, I have affixed my hand and seal, this 13th day of December, in the year 1850.

(Signed,)                    JORDAN KEEL, [L. S.]

Signed, sealed and delivered in the presence of

E. W. TEDLIE,

his

JOHN ⋈ T. BAILEY.

mark.


JOHN W. ROBERTS testified, that he knows the old Keel place, and owns a lot that he bought, and as he thinks, is 230, and it lies east of the Keel old place, in the same range.

HARRISON BAILEY owns and lives on lot No. 212, and it is on the range north of the Keel old place; settled the lot in 1840, and saw numbers on trees.   Isler owns and lives on 213, and it is in a range north of the Keel old place, and adjoins Bailey's lot on the east, and bought and settled in 1847, as 213.

WILLIAM E. GRIFFIN testified, that he owns and lives on lot 125, and that the lot north and south is almost double the common width, and he would say that there were from four to five hundred acres on the lot.

DORSEY sworn, says: That he heard John Pace tell Coleman Keel, one of the plaintiffs, that Long would be at his house on a given morning to make the survey, and to tell the other plaintiffs of it, and for them all to be there.

(The plats and plans of the 3d district referred to, accompany the record.)


WARREN & WARREN, for plaintiffs in error.


R. H. CLARK, *contra.*

Doe *et al. vs.* Roe *et al.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] As to the identity of the land in this case, that is, whether it be lot No. 210 or 231, it will not be claimed that the testimony is strongly and decidedly in favor of lot No. 210.

We think the weight of evidence the other way. We are satisfied, that the mistake occurred in the original survey of the district. The concurrent proof of a number of settlers on other lots, shows that to harmonize the numbering, the land occupied by old John Keel must have been 231, and not 210.

[2.] After a careful comparison, we can see no difference between this case and that of *Riley vs. Griffin,* (16 *Ga. Rep.* 141.) This case comes clearly within the principle decided in that; and unless we are prepared to over-rule that case, which we are not, it must control this.

[3.] It may be that the heirs of Keel are entitled, in Equity, to compensation for improvements, provided they exceed in value the rent.

[4.] It may have been better for the Court, in its charge, to have gone one step further, and told the Jury, that the paper executed to Jordan Keel by his father, was testamentary; and therefore, could not be considered by them. In substance, this was done. And after all, this omission or error, if it be one, applies to the weakness of the defendant's title, when the proof shows that the plaintiff had none.