## 43596. JOHNSON v. SACKETT et al.
(350 SE2d 419)

WELTNER, Justice.

Johnson attempted to purchase real property owned by James and Andrew Sackett as tenants in common. He negotiated a purchase price with Andrew Sackett. James Sackett then signed the sales contract, in Andrew's presence, and Johnson delivered a check for $2,000 as earnest money in the presence of both James and Andrew Sackett. Johnson understood that Andrew Sackett would sign the following morning. The following morning, however, the Sacketts attempted to disavow the contract. Johnson filed suit for specific performance, or damages, or both. The trial court granted the Sacketts' motion for

summary judgment on the basis that the sales contract lacked a sufficient legal description of the property, and Johnson appealed.

1. The sales contract states: "The undersigned Buyer agrees to buy, and the Seller agrees to sell, all that tract of land in land lot 12 of the 6th District of Gwinnett parcel number (3) three containing 73.33 acres per Gwinnett County plats and further evidenced and described on Exhibit "A" attached and by this reference made a part of this contract." The attached exhibit "A" was a copy of the relevant tax plat, initialed by Johnson and James Sackett. The trial court found that the tax plat lacked sufficient guidance because no boundaries, metes, courses, or distances are shown on the tax plat. With this holding we disagree. "A description in a deed of the property conveyed is sufficiently certain when it shows the intention of the grantor as to what property is conveyed, and makes the identification practicable. *Andrews v. Murphy,* 12 Ga. 431. The description in the deed on which the plaintiff relied in this action of ejectment, 'all the land owned by (the grantor) adjoining (another larger tract particularly described by an attached plat) on the south and southwest lying between said tract and the Lexington and Washington concrete road, totaling about sixty acres,' was not so vague, indefinite, or uncertain as to render the instrument void or to preclude the admission of parol testimony identifying the lot sued for as included within such description." *Union Central Life Ins. Co. v. Smith,* 184 Ga. 158, 162 (190 SE 651) (1937). Cited with approval in *Ga. Loan &c. Co. v. Dyer,* 233 Ga. 957 (213 SE2d 864) (1975).

The intent of James E. Sackett when he executed the contract is abundantly clear. He intended to contract to sell to Johnson, at a price of "nine thousand dollars per surveyed acre" 73.33 acres in land lot 12 of the 6th District of Gwinnett County, Georgia. The tax plat, exhibit "A" to the contract, shows the general configuration of the acreage and the fact that two of the boundaries, north and west, were on land lot lines of land lot 12. We note that as a part of the Sacketts' brief in support of their motion for summary judgment a certified copy of the deed from G. C. McCullers into the Sacketts was included. This deed was filed for record on February 20, 1963, in book 192 at page 478, Gwinnett County Records. This deed conveyed "73.33 acres, more or less" and the acreage was described by identifying present or former owners whose property was adjacent to or bounded by the conveyed property. Additionally the description stated that the west and north boundaries of the property were on land lot lines of land lot 12. The deed into the Sacketts also contained this language: "The above described tract of land is the same property containing 74 acres conveyed to G. C. McCullers by B. E. Johan by warranty deed dated September 1, 1951, and recorded in Deed Book 99, page 320, Gwinnett County Deed Records, except that por-

tion thereof containing .67 acres conveyed by G. C. McCullers to B. R. Freeman by deed dated May 8, 1952, recorded in Deed Book 105, page 133, Gwinnett County Deed Records." Clearly the property contracted for is identified. It is the same property described in McCuller's deed to the Sacketts.

"Where the boundaries of a tract of land are known, the fact that a survey may be necessary to determine the exact acreage, in order to determine the purchase price, which is stated by the acre, does not make a contract too indefinite to be enforced." *Belk v. Nance*, 232 Ga. 264, 266 (206 SE2d 449) (1974).

2. The trial court's grant of summary judgment relative to the sufficiency of the description prevented consideration of other pending motions. While we do not dispose of all the motions, we note that Johnson's contention that James Sackett is bound by his signature on the sales contract is a correct statement of the law. The Sacketts contend that the contract is unenforceable because Andrew Sackett has not signed it. They cite OCGA § 13-5-30, which provides that: "To make . . . [any contract for sale of lands, or any interest in, or concerning lands] binding on the promisor, the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him." The written contract contains no condition that it must be signed by both Andrew and James Sackett, nor is there any indication on the contract that the parties contemplated that Andrew would sign. It is initialed throughout by James Sackett, and signed by James Sackett as seller. The contract complies with the requirements of OCGA § 13-5-30. As we stated in *Smith v. Hooker/ Barnes, Inc.*, 253 Ga. 514 (2) (322 SE2d 268) (1984), if a party contracting to convey property not then owned by him is unable to deliver good title, he will be liable in damages for breach of contract.

*Judgment reversed. All the Justices concur, except Clarke, P. J., who dissents.*

CLARKE, Presiding Justice, dissenting.

I respectfully dissent to the majority opinion. In my view, a contract was not completed in the absence of being executed by both of the prospective sellers. I realize that the form of the contract is such that it is not clear that two sellers are contemplated. However, the buyers' own affidavit in support of his motion for summary judgment highlights his awareness of such a contemplation.

"The consent of the parties being essential to a contract, until each has assented to all terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition." OCGA § 13-3-2. Since everyone in this transaction was aware that it involved three parties, two sellers and one purchaser, there is no binding contract here because each of the parties had not assented to all of the

terms. It is my view that to hold otherwise will set a dangerous trap for unwary owners of undivided interest in real estate who are approached by prospective purchasers. It is a common practice for purchasers to prepare contracts on forms similar to the one utilized in this case and to approach one-by-one the holders of undivided interest seeking signatures. Under the majority holding, it would be possible for the owner of a one-tenth undivided interest to sign the contract and then be liable to the prospective purchaser for the refusal of the owners of the remaining 90% interest to sign. I believe both the law and justice demand that a contract be complete before it becomes enforceable. For this reason, I dissent.

DECIDED NOVEMBER 13, 1986 —
RECONSIDERATION DENIED DECEMBER 18, 1986.

*Quinton S. King, Edward C. Stone,* for appellant.
*Wall & Noonan, W. Alford Wall, Douglas T. Noonan,* for appellees.