43631, 43632. BRASHER et al. v. TANNER et al.; and vice versa.
(353 SE2d 478)

PER CURIAM.

This is a suit for damages for the denial of access to two lots on Sapelo Island brought against Joe Tanner, then Commissioner of the

Department of Natural Resources, and C. V. Waters and Fred Todd, employees of DNR who were responsible for the management of the island.[1] As such, it is not a suit against the state to establish title; however, the primary issue at trial was whether the plaintiffs had sufficient ownership interest in island property so as to be entitled to access. The DNR employees claim that the state owned the lands either through quitclaim deeds or adverse possession and thus, the validity of deeds purporting to establish such interest in the plaintiffs was brought into question.

A jury found that these DNR employees had wrongfully prevented the plaintiffs from landing a vehicle on Sapelo and awarded $10 general damages and $100 punitive damages against each of these defendants. The jury made a special verdict as to each of the two lots. Its verdict as to Lot 4 was set aside by the trial court on the basis of a legally insufficient description, but its verdict as to Lot 7 was incorporated into the courts' final judgment. Both sides appeal.

In 1983, plaintiffs Bill Brasher, a real estate broker, and Norman Kittles purchased whatever interests were owned by three of the four children of Jack Handy and Elethia Walker Handy, who had both been born and raised at Raccoon Bluff on Sapelo Island. Plaintiffs claim interests in three acres in Lot 7 through Jack Handy and one and one-half acres in Lot 4 through Elethia Walker Handy.

Raccoon Bluff was once a community located on the north end of Sapelo Island. By the early 1960's, this area had been vacated, and much of the land was purchased from the owners by R. J. Reynolds and Howard Coffin, who at different times owned the surrounding land. In 1969, the State acquired the entire northern end of the island, including a quitclaim interest to Raccoon Bluff, from Mrs. R. J. Reynolds. At that time, a chain link fence boundary was established to separate that land from that of the Sapelo Island Research Foundation, which owned most of the southern end of the island. The northern end became known as the Richard Reynolds Wildlife Management area and efforts were made to start a turkey population, to encourage the proliferation of deer in the area, and to acclimatize newly hatched southern bald eagles to the wild.

The state in 1976 also acquired the southern end of the island from the Sapelo Island Research Foundation and now claims to own most of Sapelo except the community at Hog Hammock. At least since 1976, the state has controlled access to and use of the roads and docks on the island and allows vehicles only to permanent residents of the island including employees of the state and its agencies located

---

[1] Jim Evans, another DNR employee working on Sapelo Island, was also a defendant but the jury did not assess any damages against him.

there and the permanent residents of Hog Hammock.

In July 1983, plaintiff Bill Brasher inquired of then Commissioner Tanner about bringing a vehicle over to Sapelo. Tanner replied that it was his information that the state owned the northern end of the island, and that Brasher should submit his claim in writing to the Attorney General for review. Brasher later requested permission to land a plane on the island's airstrip to gain access to his property, but permission was denied on the basis that his ownership had not yet been established. He claims to have mailed the pertinent documents to the Attorney General's office in Atlanta on September 21 or 22, 1983, and on September 27 attempted to bring a jeep to the island by private barge. He was rebuffed in a confrontation with the defendants, Waters and Todd, under the telephone directions of Tanner, who reiterated that Brasher should first establish his claim; then, if successful, he would be issued a revocable license under DNR policies. On October 3, Brasher and his attorney hand delivered a duplicate set of deeds to the Attorney General's office, but he and Kittles filed this suit on October 27.

1. In Case No. 43631, plaintiffs appeal the judgment n.o.v granted in favor of the DNR employees as to Lot 4. The trial court held that the description in that deed is insufficient to convey any interest in that property to the plaintiffs. We agree with the trial court.

The test for definiteness of the description of land in a deed is well set out in *Blumberg v. Nathan*, 190 Ga. 64, 65-66 (8 SE2d 374) (1940): "A description of land in a deed, in order to be valid, must identify the land or must contain a key by the use of which the description may be applied by extrinsic evidence. Possibly this idea of a 'key' has been overworked, and it has certainly been frequently misunderstood. There need not be confusion about this word, and no confusion will result if the word is given its true and literal meaning . . . [A]ny descriptive words in a contract for the sale of land, which will lead unerringly to the land in question, constitute the key which the law contemplates. But no amount of words in such a contract which fail to lead definitely to the land therein will constitute a key. If such words, when aided by extrinsic evidence, fail to locate and identify a certain tract of land, the description fails and the instrument is void." Accord *Crawford v. Verner*, 122 Ga. 814 (1) (50 SE 958) (1905); *Rogers v. Manning*, 203 Ga. 771, 773 (48 SE2d 527) (1948); *Donaldson v. Nichols*, 223 Ga. 206, 207-208 (154 SE2d 201) (1967); *Wisener v. Gulledge*, 251 Ga. 419 (306 SE2d 642) (1983). Pindar, Georgia Real Estate Law, § 19-153 (2nd ed. 1979). The question of sufficiency of the description is generally one for the court and not the jury. *Bank of Cumming v. Chapman*, 245 Ga. 261 (264 SE2d 201) (1980).

The legal description of Lot 4 in the plaintiffs' deed is as follows:

"All of that certain lot, tract or parcel of land situate, lying and being in the 1312 District, G.M., McIntosh County, Georgia, at Raccoon Bluff on Sapelo Island, containing Twenty-One (21) Acres, more or less and being Lot (4) Four of the Raccoon Bluff Subdivision of William Hillary. Said property being bounded Northerly by Lot 3; Easterly by Blackbeard Island River; Southerly by Lot 5; and Westerly by the out line of Raccoon Bluff Tract. This being that same property conveyed to Ben Brown by deed and plat from William Hillary dated July, 1882 and recorded in Deed Book 'U' at Page 298 and 299, to which said deed and plat reference is hereby made for all intents and purposes."[2]

The plaintiffs claim only one and one-half acres from this 21-acre conveyance and no key is furnished to the location of that lot within the larger tract.[3] *Moody v. Vondereau*, 131 Ga. 521 (1) (62 SE 821) (1908); *McAfee v. Newberry*, 144 Ga. 473, 475 (87 SE 392) (1915). Therefore, the trial court did not err in granting judgment n.o.v to the DNR employees as to Lot 4.

2. The DNR employees, in Case No. 43632, cross-appealed enumerating as error the refusal of the trial court to grant judgment n.o.v. as to Lot 7. The same rules of law apply and the question is again one for the court. The plaintiffs here claim three acres of Lot 7, which is only a part of the original 35-acre lot. The three acres were first conveyed from the larger lot in a deed from James Robinson to Anthony Handy in March 1907. The legal description from the warranty deed from Jack Handy's heirs is as follows: "that certain tract of land in McIntosh County on Sapeloe Island, (3) acres, more or less, and being in the 1312 District, and bounded on the North by Tom Handy and brothers, on the East by public Road, South by John Bailey and West by Sam Roberts."

In *Glover v. Newsome*, 132 Ga. 797 (3) (65 SE 64) (1909), the rule is set out that "[w]here a parcel of land conveyed is described as bounded on one side by the lands of a named person other than the

---

[2] The original deed dated July 1882 from William Hillary to Ben Brown contains two northerly boundaries and no western boundary.

[3] A plat attached to the William Hillary-Ben Brown deed shows one-acre and four-acre tracts out of Lot 4 established by a surveyor in 1882. This plat, however, suffers from the same defects as the deed, and furnishes no key to the one and one-half acres claimed by the plaintiffs. Compare *Johnson v. Sackett*, 256 Ga. 552 (350 SE2d 419) (1986).

Plaintiffs also claim they have shown evidence of title for 40 years under OCGA § 44-2-22. They presented a deed from William Hillary to Ben Brown conveying 21 acres in 1882 and recorded in 1924, and the plaintiffs' deed from the Handy heirs, claiming as heirs to Ben Brown through their mother Elethia Walker Brown and Betsy Walker. The DNR employees, however, established a deed from the heirs of Ben Brown, including Betsy Walker, into Bermuda Grovenor, conveying parts of Lot 4 of Raccoon Bluff on November 20, 1924. Since the description is inadequate, it is unclear whether or not this same interest in the land had already been conveyed.

grantor, it is competent *to show what were the lands of such person,* for the purpose of applying the description and locating the boundary. While title to real estate can not be proved by a parol statement thereof, the description of this particular boundary will be sufficient, if it be made to appear that the maker of the deed recognized such other person as the owner and as claiming the land, and *the boundary line of the adjacent tract is established by competent extrinsic evidence."* (Emphasis supplied.)

The main issue in *Glover* is whether the metes and bounds description in the deed was valid when it did not appear from the deed in what town, county or state the land was located or even where the deed was executed or recorded. There is no indication whether the court considered the description in the deed to have been a facially valid description or one which only provided a key to the exact identification of the property conveyed.

Generally, valid descriptions fall into two categories. The first category is those descriptions which provide by words a means of identification of land without resort to information beyond the words contained in the description. The second category is those descriptions which, while not sufficient to independently identify the land, provide a key which will unlock the mystery to the location of the real estate conveyed. Whether a description is independently valid or presents only a key and requires extraneous evidence for the identification and location of land becomes important for burden of proof reasons.

We hold that an independently valid description amounts to prima facie evidence of the identification of the land and will stand unless the party attacking the deed can overcome this evidence by extraneous evidence showing that the words of the description fail in fact to describe a parcel of land. For instance, if a party attacking a deed can show a recited boundary does not exist or that the point of beginning of a courses and distances description does not exist, the deed falls unless it is saved by additional words in the description. The burden under these circumstances rests upon the party attacking the deed. If, however, the description provides only a key to the exact location of the land, the deed is admissible in evidence, but standing alone does not afford proof of a good conveyance. The party asserting claim under such a deed must support the deed with extraneous evidence of just what mystery the key unlocks.

In this case we face the first question of whether the metes and bounds description of the three acres is an independently valid description or whether it simply presents a key. From early times we have given greater weight to metes and bounds descriptions than to courses and distances descriptions. In fact, we have held, "Courses and distances occupy the lowest, instead of the highest grade, in the

scale of evidence, as to the identification of land." *Riley v. Griffin*, 16 Ga. 141, 142 (1854). The fact that the boundaries given in a metes and bounds description are in the form of adjoining lands owned by parties other than the grantor, rather than natural or artificial monuments, does not invalidate the description, nor does it lower its grade from one which is independently valid rather than one which only provides a key. Therefore, the burden of showing that the boundaries recited do not exist rests upon the party attacking the deed. No such evidence was presented here and the trial court was correct in finding the description valid.

3. We agree with the DNR employees that there is no evidence to support the jury's finding of punitive damages. Therefore, that award must be set aside.

*Judgment in Case No. 43631 affirmed; judgment in Case No. 43632 affirmed in part, reversed in part. All the Justices concur, except Hunt, J., who concurs in the judgment only as to Division 2.*

HUNT, Justice, concurring specially.

While I concur in the judgment reached in this opinion, I write to disagree with that part of Division 2 which holds that a deed containing a description by adjoining landowners is presumptively valid and shifts the burden of going forth with the evidence to the party attacking the deed.

As I read the cases, it has long been the rule that a description by adjoining landowners provides a key which opens the door to extrinsic evidence of the location of the property which must be furnished by the propounder to prove that the deed is valid. *Fulcher v. Eighth Street Land Co.*, 237 Ga. 239 (222 SE2d 258) (1976); *Phillips v. Wilson*, 212 Ga. 54, 57 (90 SE2d 553) (1955); *Cross v. Nicholson*, 211 Ga. 769, 770 (88 SE2d 390) (1955); *Morris v. Beckum*, 145 Ga. 562 (89 SE 704) (1916); *Glover v. Newsome*, 132 Ga. 797 (3) (65 SE 64) (1909).

Under the circumstances of this case, however, there was sufficient extrinsic evidence to show that the house and three acres was the Jack Handy homeplace and thus to support the jury's verdict that the plaintiffs acquired *some* interest in Sapelo Island which entitled them to its access. For this reason, I would also affirm the judgment reached in Division 2.

DECIDED MARCH 4, 1987 —
RECONSIDERATION DENIED MARCH 24, 1987.

*White & Draffin, Daniel H. White*, for appellants.
*Michael J. Bowers, Attorney General, J. Robert Coleman, Senior Assistant Attorney General, Wallace E. Harrell, Robert P. Killian,*

*Charles C. Stebbins, Jr.,* for appellees.