Cole, Ch. J.
i Adverse husbanfaná wife: estoppel, I. A careful examination of the testimony satisfies us, that although the defendant in the action right had married the widow, who had an nnassigned dower interest in the land in con. troversy, and made his home with said widow upon said land, yet it is quite apparent that he was mainly engaged in other business than farming said land, and was in no just sense in possession of it either as tenant or claimant; and that, under the facts shown in this case, the judgment recovered against him in the action of right gave to the plaintiff therein no claim whatever to turn these plaintiffs out of possession of their real estate, under an execution issued upon such judgment. There is no claim that the said defendant in said action of right, L. D. Hamilton, had any title or interest in said land, except such as he acquired by reason of his inter-marriage with the widow of the former owner thereof; and, even if he might be regarded as a tenant, there was no reasonable notice of the action given to the landlords or holders of the title, as would make' the judgment of any effect *475 against them, under the provisions of the Code of 1851, section 2003, or the Revision of 1860, section 3571; and the plaintiff in that action had full knowledge of the claim and title of all the parties.
II. A most able and elaborate argument was made by-appellant’s counsel in this case,, in support of the doctrine that to constitute such adverse possession as would toll the right of entry under our statutes of limitations, the entry upon the land, as well as the subsequent possession, must have been made and continued under color and claim of adverse title; that a tortious entry upon land, and the subsequent acquiring of an adverse title will not toll the right of the true owner, however long the possession may be continued; and it is further claimed in this case, that, as a matter of fact, the ancestor of plaintiffs had no color of title, and made no claim to the land when he made his entry thereon.
We find the fact otherwise, and hence have no occasion to pass upon the legal proposition so ably and fully argued. The only witness who testifies as to the precise time at which the plaintiffs’ ancestor, Jeremy G-. Anderson, entered upon the premises in dispute, says it was “ in the month of October, 1842;” other witnesses indicate generally about the same period, and it appears that the deed for the land, made by Bennett to said Anderson, was made October 7, 1842. The fact that he also obtained another deed or title from his brother, in March, 1843, would not, of course, defeat the color of title given by the first deed under which he entered; Ruddick v. Marshall, 28 Iowa, 487; and further, several witnesses testify to the fact that plaintiffs’ ancestor purchased the- claim or title of one Burtis, whose wife was of Indian descent, a quarter blood, and succeeded to his possession, which certainly was not under nor consistent with the defendants’ title, which, it is not disputed, is the paramount or decree title.
'
The suggestion in argument, that Barrett’s tax title was *476 merged in the decree of partition — the decree title, because under the statute of partition it became the duty •of all persons having claims of title to present them to the court for allowance, is robbed of its force, as we think, by the fact that, while the decree of partition was made May 8, 1841, Barrett’s tax deed, the last, was not made till after the decree, December 9,1841.
It follows from these views that the judgments of the district court and of the general term must be
Affirmed.