ATWELL v. SHOOK.

(Filed November 17, 1903.)

1. ADVERSE POSSESSION — *Homestead—Allotment—Widow—Heirs —The Code, sec. 144.*

The possession of a widow under a homestead inures to the benefit of the heirs, and for the purpose of perfecting title in them by adverse possession may be tacked to that of the husband.

2. ADVERSE POSSESSION—*Color of Title—Widow—Deeds.*

Where the possession of a widow, when tacked to the possession of her husband, is sufficient to confer title to the land on the heirs of the husband by adverse possession, whether a certain deed of a commissioner in a partition proceeding constituted color of title so as to complete the title of the heirs by adverse possession is immaterial.

3. APPEAL—*Exceptions and Objections—Instructions.*

An objection to a certain instruction on the ground that there was no evidence to support it cannot be reviewed, unless all of the evidence is contained in the record.

ACTION by J. D. Atwell against J. M. Shook, heard by Judge *W. R. Allen* and a jury, at August Term, 1903, of the

Superior Court of IREDELL County. From a judgment for the plaintiff the defendant appealed.

*L. C. Caldwell* and *H. P. Grier,* for the plaintiff.
*Furches, Coble & Nicholson* and *J. B. Connelly,* for the defendant.

CONNOR, J.   This is an action for the recovery of real estate. The land in controversy is shown on the map, being the three-acre tract included within the boundaries set forth in the complaint, also a strip on the southern border of the 150-acre tract. It is admitted that the title is out of the State. The plaintiff claims title under a deed made on the 14th May, 1890, by W. M. Robbins, commissioner, pursuant to a decree made in a proceeding brought by the heirs of J. M. Harden for a sale for partition. Robbins conveyed the lands to the plaintiff and another. By mesne conveyances such title as his deed conveyed to the entire tract is now in the plaintiff. The plaintiff introduced a deed dated February 4, 1848, from Margaret G. Kirkpatrick to J. M. Harden for the 150-acre tract. He showed no paper title in J. M. Harden to the three-acre tract. J. M. Harden died in 1869. There was evidence tending to show that he had been in possession of the three-acre tract from 1853 or 1854 to the time of his death. In 1869, after the death of J. M. Harden, his widow, Mrs. M. A. Harden, applied for and had allotted to her the 150-acre tract and the three-acre tract as a homestead. In 1890 Mrs. Harden made a deed to J. M. Shook, the defendant, for the three-acre tract, including the land in controversy on the south border of the 150-acre tract. This deed was registered in 1901. The defendant introduced evidence tending to show that he went into possession of that part of the 150-acre tract in controversy in 1873 or 1874, and that he is still in possession thereof. He also introduced evidence

tending to show that he went into possession of the three-acre tract in 1890, and is still in possession thereof. The plaintiff introduced evidence tending to show that Mrs. M. A. Harden went into possession in 1869 and remained therein until her death, a year or two before this action was brought.

The Court instructed the jury in respect to the three-acre tract that the allotment of a homestead to Mrs. Harden did not confer title, and is only material in determining the nature and extent of her possession; that if her husband was in possession prior to his death and she continued his possession and made application for the allotment of a homestead in his land and the allotment was made, and she continued her possession, claiming the right to such possession under the allotment, her possession would not be adverse to the heirs of her husband or those claiming under them. To this instruction the defendant excepted.

The Court further charged the jury: "If you find by the greater weight of evidence that J. M. Harden was in possession of the three-acre tract prior to his death, claiming it as his own; that after his death Mrs. Harden continued in possession as his widow and applied for a homestead in his land and upon her application the three acres were allotted as a part of her homestead, and she continued in possession under the allotment, then her possession would not be adverse to the heirs of J. M. Harden, but would enure to their benefit and to the benefit of the plaintiff who claims under him; and if this possession was open and notorious and under claim of right for twenty years, then the plaintiff without deed would be the owner, and if you so find you will answer the first issue 'Yes.'" The defendant excepted.

The Court also charged the jury: "If you find by a greater weight of evidence that J. M. Harden was in possession of the three acres prior to his death, claiming it as his own; that after his death Mrs. Harden continued in possession as his

widow and applied for a homestead in his land; that upon her application the three acres were allotted as a part of her homestead, and she continued in possession under the allotment, then her possession would not be adverse to the heirs of J. M. Harden, but would enure to their benefit and to the benefit of the plaintiff who claims under him, and if this possession was open and notorious and under color of title for seven years, then the plaintiff would be the owner and you will answer the first issue 'Yes.' " The defendant excepted. The Court charged the jury that the deed from Robbins, commissioner, was color of title.

The defendant requested the Court to give the following special instructions: "That the assignment of a homestead conveys no title to the homesteader; it only protects the homesteader against execution creditors; and a homestead laid off on land not belonging to the homesteader, or covering land that did not belong to the homesteader, would give the homesteader no right of possession, nor would it prevent the rightful owner from recovering possession of such land at any time. If the homestead laid off to Mrs. Harden covered land that did not belong to her husband, it gave her no right to the possession of such land as her husband did not own, nor would such homestead be color of title to land not owned by Harden." The Court gave the following part of such instruction and refused to give the remainder: "That the assignment of a homestead conveys no title to the homesteader; it only protects the homesteader against execution creditors. Nor would such homestead be color of title to land not owned by Harden." The defendant excepted.

We concur with his Honor that the allotment of the homestead to Mrs. Harden conferred no title upon her, nor did it in any manner or any degree affect the question of title as against the defendant. The case, however, in respect to the three-acre tract does not turn or depend upon the allotment of

the homestead as affecting the title to the land. *Keener v. Goodson,* 89 N. C., 273; *Littlejohn v. Egerton,* 77 N. C., 379; *Joyner v. Sugg,* 132 N. C., 580. The charge, as construed by us, does not controvert this proposition. It is based · upon the principle that if one goes into possession without color of title and remains therein, either by himself or those claiming under him, for twenty years, it thereby bars the entry of the true owner, unless under disability. The Code, sec. 144. J. M. Harden having entered into possession of the land in 1853 and remained continuously therein until his death in 1869, such possession being continued by his widow until her death, completes the twenty years required to bar the action. The defendant, however, insists that the possession of the widow under the homestead allotment does not enure to the benefit of the heirs, and that from the death of Harden to the death of his widow neither they nor any .one claiming under them were in possession, and that therefore Harden's possession having continued only sixteen years the plaintiff, never having been in possession under his deed, is not entitled to maintain the action.

In *Alexander v. Gibbon,* 118 N. C., 796, 54 Am. St. Rep., 757, *Mr. Justice Furches* says: "The plaintiffs may establish their title in any way they might do, if this had originally been commenced as an action of ejectment. By showing an unbroken line of conveyances from the State to them or to · Joseph M. Alexander, their father, and that he is dead, or by showing possession in Joseph M. Alexander and those under whom he claimed to the time of his death, and the possession of his heirs at law since his death, for a sufficient length of time to establish or to ripen their title into a perfect title." *Mobley v. Griffin,* 104 N. C., 112.

It is clear that the possession of the heir may be added to the possession of the ancestor to complete the twenty years which will bar the action. We do not understand this to be

controverted, but the defendant says that the possession of the widow was not the possession of the heirs, but was adverse to them. This is the point in the case. We agree with his Honor that the question is not whether the widow took any title by the allotment of the homestead, but whether she claimed under the heirs, thereby making her possession their possession. Certainly her possession could not be adverse to the heirs, and this is so without regard to the question, discussed before us, as to the effect of the allotment of the homestead. If instead of taking a homestead she had taken dower in her husband's land, and in the allotment the three acres to which he had no paper title were included therein, and she remained in possession, certainly such possession would enure to the benefit of the heirs, being an elongation of the husband's title or estate. This would not be upon the principle that she acquired any new or independent right by the allotment of the dower, but that she claimed under the husband and thereby her possession enured to the benefit of the heirs.

In *Williams v. Bennett,* 26 N. C., 122, *Ruffin, C. J.,* says: "The question then is whether the possession of the widow of the mortgagor is held under the mortgagee or adversely to him. Clearly, we think, it is the former, *whether she merely continues in possession after the death of the mortgagor, as his widow, or holds a part of the premises as dower assigned to her.* * * * The widow but continues the estate and possession of the husband, which he held under the mortgagee, and cannot therefore set up an estate in any other person. Neither can she set up title in herself by virtue of her possession as tenant in dower; for in its very nature it is but a continuation of the husband's estate, and is therefore affected by the estoppels which attached to it in the hands of her husband."

In *Buffalow v. Newsome,* 12 N. C., 208, 17 Am. Dec.,

565, *Henderson, J.,* says: "The widow is estopped by her husband's deed, for she is *tenant to the heir* who is estopped, and the tenant is always bound by an estoppel on his landlord when his title is derived after it arises. * * * Upon his death, the *widow succeeded to the possession,* accompanied by the estoppel, as she could not succeed to her husband's possession stripped of its incidents."

In *Nixon v. Williams,* 95 N. C., 103, *Merrimon, J.,* speaking of the possession of the widow after the death of her husband, says: "The widow, entitled to dower, remained upon the land after the death of her husband, and continued to do so for several years, but no dower was ever assigned to her. Her possession was not adverse to the wife of the plaintiff in her lifetime; indeed, she was in possession under her, and the defendant's presence did not have the effect to prevent the seizin of the plaintiff's wife, or his rights as the husband." The principle as deduced from this case is thus stated: "The possession of a widow, to whom no dower has been assigned, is not adverse to the heirs at law of her deceased husband."

In *Page v. Branch,* 97 N. C., 97, 2 Am. St. Rep., 281, it was shown that the widow remained in possession of the land, no dower having been allotted to her. His Honor charged the jury that such possession was not adverse to the heirs of her husband. The Court, through *Davis, J.,* says: "The charge of his Honor and the finding of the jury render it unnecessary for us to consider the character of Rebecca Branch's possession—it was not adverse," citing *Grandy v. Bailey,* 35 N. C., 221.

These authorities fully sustain the contention that the possession of the widow of J. M. Harden was not adverse to the heirs.

The case on appeal thus states the point in controversy: "As to the three-acre tract the question of law arose whether the possession of Mrs. Harden, under the homestead allot-

ment, enured to the benefit of the heirs of J. M. Harden, and through them to the plaintiff, so as to ripen the possession of J. M. Harden, who the evidence tended to show held possession from 1854 to the time of his death in 1869, into title by adverse possession for twenty years; or whether the possession of Mrs. Harden failed to be a continuance of the possession of J. M. Harden, and whether it therefore enured to the benefit of the defendant by reason of the plaintiff not being able to show title by possession, he having shown no paper title in himself, except such as his deed from Robbins, commissioner, as aforesaid, under a proceeding for partition, may have been." The question thus presented is whether the possession of the widow under the homestead allotment can be "tacked" to that of the husband, thereby making an adverse possession for twenty years available to the heir or his grantee. It is clear that if the heirs had, upon the death of J. M. Harden, taken possession and conveyed their interest to the plaintiff who had immediately gone into and remained in possession for a period which, "tacked" to the possession of Harden, completed the statutory period, he would, as against all persons not under disability, have acquired title in fee. Did the possession of the widow under the homestead work out the same result? For the purpose of "tacking possessions" it is essential that they must be continuous, and there must be some privity either of estate or possession between the successive occupants. Separate and unconnected disseizins cannot be "tacked," as each new disseizin makes a new period from which time must be counted. If the possession acquired by the disseizin be interrupted or broken, and the former adverse holder quits possession, the true owner is by virtue of his legal title instantly seized of the premises by operation of law. Privity denotes merely a succession of relationship by deed or other act, or by operation of law. I Cyc., 1002. It is held by the Supreme Court of

Massachusetts that there must be some privity *in estate* between the successive occupants; therefore the possession of the widow, no dower having been assigned, cannot be tacked to that of the husband. *Sawyer v. Kendall,* 10 Cush., 241. In Connecticut it is held that privity of estate is not necessary. "It is sufficient if there is an adverse possession, continued and uninterrupted for fifteen years, whether by one or more persons. Doubtless the possession must be connected and continuous, so that the possession of the true owner shall not constructively intervene between them, but such continuity and connection may be effected by any conveyance, agreement or understanding which has for its object a transfer of the rights of the possessor, or of his possession, and is accompanied by a transfer of possession in fact." *Smith v. Chapin,* 31 Conn., 530.

In *Crispin v. Hannoven,* 50 Mo., 536, it is said: "Not even a writing is necessary if it appear that the holding is continuous and under the first entry." In *McNeely v. Langdon,* 22 Ohio St., 32, the Court says: "The mode adopted for the transfer of the possession may give rise to questions between the parties to the transfer, but as respects the rights of third persons, against whom the possession is held adversely, it seems to us immaterial if successive transfers of possession were in fact made, whether such transfers were made by will, by deed, or by mere agreement, either written or verbal." In *Weber v. Anderson,* 73 Ill., 439, it is said: "When land is held adversely by different occupants the identity and continuity of their possession, in order to show a limitation, may be shown by parol evidence." "The test question as to whether the requisite privity exists between successive tenants is whether the occupation of the subsequent tenant is referrable to the same entry and under the same claim of right, as it is called, as that of the prior occupant. In other words, whether the occupation of the one constitutes but a con-

tinuation of the possession of the other." Sedgwick and Wait on Trial of Title, sec. 747. "In order to create the privity requisite to enable a subsequent occupant to "tack" to his possession that of a prior occupant, it is not necessary that there should be a conveyance in writing. It is sufficient if it is shown that the prior occupant transferred his possession to him even though by parol. * * * But in all cases the several occupants must be so connected that they can be referred to the original entry, and the continuity of the possession must be unbroken. * * * So, too, the successive occupants must claim through their original predecessors." Wood on Lim., 693. From these authorities it would seem that, assuming as his Honor did, the allotment of the homestead was invalid and conferred no right upon the widow, yet if she remained in possession under and by virtue thereof, she was not a new disseizor, but that such possession was a continuation of that of her husband and enured to the benefit of the heirs. This Court, in the several cases cited, having held that the possession of the widow, when no dower was assigned, was not adverse to the heir, we do not perceive how an invalid assignment of a homestead with the assent of the heir could render her possession thereunder adverse. If the heirs by parol had attempted to give her an estate for life, and had, pursuant thereto, put her in possession, such possession, as we have seen, would have been continuous and in privity with that of the heirs who claimed under their father. It is the taking and holding the possession under and by virtue of the original entry which constitutes the continuity and privity which the law requires. It has been expressly held by the Supreme Court of Kentucky in *Mills v. Bodley*, 4 T. B. Mon. (Ky.), 248, "that the possession of the widow enures to the benefit of the heirs, and, for the purpose of perfecting title in them, may be tacked to that of the husband; and this, because she cannot without the assent of

the heirs change the character of the possession." We concur in the instruction given by his Honor to the jury upon this question.

The defendant's third exception has given us more difficulty. The deed from Robbins, commissioner, is made "subject to the life-estate of Mrs. Harden, widow," hence it would seem that her possession, without color of title, could not be converted into possession under color of title because of the commissioner's deed, which conveyed the land subject to what was supposed to be her life-estate. The question is an interesting one, and no authorities are furnished us by counsel, nor have we been able to find any case directly in point. There seems to be no controversy or denial of the fact that J. M. Harden went into possession in 1853 or 1854 and so remained until his death, and it is admitted that his widow remained in possession under the homestead allotment until her death. Upon these facts it is clear that more than twenty years elapsed before the defendant took possession in 1890. It is therefore immaterial whether the deed from the commissioner to the defendant constituted color of title, or if so, whether it changed the character of the possession of the widow; hence, any error, if there be such, in the charge in regard to the seven years' possession under color would be harmless. The plaintiff had no right of entry under his deed until the death of the widow, and this would be true, notwithstanding the fact that the widow had no life-estate; as he took expressly subject to her right to remain on the land during her lifetime, claiming under the heirs, who recognized such right and conveyed expressly subject thereto, his right of possession was postponed until her death. There was no reversible error in the instruction given.

In regard to the tract lying on the southern border of the 150-acre tract, assuming that the jury found under the instruction of the Court the boundaries to be as contended for by

the plaintiff, the only question in controversy was whether the defendant had such adverse possession as barred the plaintiff's action. His Honor charged the jury with respect to this tract: "That if they found that the defendant entered into and took adverse possession in 1873 or 1874, and that he had been in continuous adverse possession of the same for twenty years, this would ripen his possession into a title, and they would answer the issue 'No.'" The Court further charged the jury: "That if they found that the boundaries are not located as the plaintiff contends, still if the jury find that the plaintiff and those under whom he claims have been in the adverse possession for twenty years under known and visible lines, then they will answer the third issue 'Yes.'" The defendant's exception to this charge is based upon the statement that there was no evidence of any possession of said land by the plaintiff or by any one whose possession enured to his benefit. The case on appeal, while not setting out the evidence in full, states that "the plaintiff also offered evidence tending to show that J. M. Harden during his lifetime was in possession of all of the land down to the black line, and that his widow, under her homestead assignment, was in possession of the same land up to the time of her death, which occurred about two years ago." There was also evidence tending to show that the defendant had possession of this disputed land since 1873. If an exception is based upon the ground that there was no evidence to sustain the instruction, this Court cannot pass upon it unless all of the evidence is sent up. We have a statement in the case on appeal that there was evidence tending to show the contention of the plaintiff and that of the defendant, and we must take it to be true.

The exception cannot be sustained.

The judgment of the Court below must be

Affirmed.