MAUD M. BARRETT et al. v. FRANK BREWER et al.

(Filed 7 December, 1910.)

1. Deeds and Conveyances—"Color"—Ancestor — Possession—Continuity.

Those in adverse possession of land claiming "color of title" under a deed made to their ancestor, must show that the ancestor entered into possession under his deed, and continuity of that possession in themselves, in order to ripen their title.

2. Deeds and Conveyances—"Color"—Possession—Interpretation of Statutes.

Title to lands by adverse possession under "color" is by virtue of our statute, Revisal, sec. 382, and it is necessary thereunder to show possession and not merely a claim of title.

3. Same—Ancestor—Continuity—Heirs.

"Color of title" cannot descend to the heirs unless the ancestor entered into the possession of the lands, and to be available to the former it must come by continuity to them. Hence the heirs cannot be advantaged by the color of title of an ancestor who had not entered into the possession of the lands.

4. Deeds and Conveyances—"Color"—Possession—"Privity."

The term "privity" when used in connection with "color of title" means privity of possession, and not privity of blood, and the latter occupant must enter possession under that of the prior one when his claim of "color" is relied upon.

APPEAL from *Biggs, J.,* at the April Term, 1910, of MONT-GOMERY.

Civil action to recover possession of a tract of land. At the conclusion of the evidence, his Honor being of opinion that the plaintiffs had failed to make out title, sustained a motion to non-suit and dismissed the action. The plaintiffs excepted and appealed.

This controversy was before this Court at another term and is reported in 143 N. C., 88, and is there referred to for the general statement of facts.

*U. L. Spence* for plaintiffs.
*R. T. Poole* and *J. A. Spence* for defendants.

BROWN, J. Plaintiffs introduced a grant to defendants from the State dated 15 October, 1891, covering the land in controversy, thereby proving that the legal title was in defendants at that time. Plaintiffs attempted to show that they have acquired title since then by adverse possession under color of title for seven years. For this purpose they introduce a deed from G. R. Bryant to Josephine Barrett dated 5 February, 1870, and recorded 13 May, 1896, covering the same land.

This deed was good color as to the grantee herself had she entered upon and taken possession of the land under it. The evidence is that Josephine Barrett died in 1872, when she was eight years old; that the deed was made to her about two years before she died, and that neither she nor any one for her ever entered upon the land and claimed it for her under this deed. The land was woodsland entirely, and Josephine resided fourteen miles from it. She was born in 1864 and died eight years later. The plaintiffs claim that they have shown seven years' adverse possession since the date of the grant to defendants, and the "color" they offer is the deed to Josephine Barrett, who was their sister, and whose heirs at law they are.

Inasmuch as their ancestor had no legal title to the land, never was in possession of it and never claimed it, nor did any one for her, can these plaintiffs be permitted, many years after her death, to enter upon the land without title and offer the deed to their ancestor as good color for their unlawful entry?

As to what constitutes "color of title" and "claim of title" the courts differ in the different States because it largely depends upon the language of the different statutes. As said by *Judge Henderson* in *Tate v. Southard,* color of title is evidently the production of our own country. 10 N. C., 120.

The term "color of title" is not synonymous with "claim of title" as used in the statutes of some States. To constitute color of title there must be a paper title to give color to the adverse possession, whereas a claim of title may be constituted wholly by parol. *Hamilton v. Wright,* 30 Iowa, 480.

Our statute does not recognize a mere claim of title. It enacts that "when the person in possession of any real property, or those under whom he claims, shall have been possessed of the same, under known and visible lines and boundaries and under colorable title for seven years, no entry shall be made or action sustained," etc. Rev., sec. 382.

It has long been settled in this State that the colorable title required by the statute must be "a writing upon its face professing to bear title, but which does not do it, either from want of title in the person making it, or the defective mode of conveyance that is used." *Tate v. Southard, supra; Williams v. Scott,* 122 N. C., 550.

In this last case it is said: "The defendants insist further that the possession of the *feme* defendant, the heir-at-law of the bankrupt, since his death in 1878, is color of title by descent. Counsel cited us some authorities from other States to that effect, but upon examination it is found that that has been made so by statute. Whatever the law may be elsewhere, there can be no such thing in North Carolina as color of title without some paper writing attempting to convey title." It is plain, therefore, that plaintiffs cannot set up a "claim of title" under our statute.

This brings us to the inquiry, is the deed to the ancestor, under which she made no entry or claim to the land, or no one for her,

good color for an entry made more than twenty years after her death by her heirs at law, and after the State had granted the lands to defendants.

The reason usually given to support the doctrine of maturing title by adverse possession under color of title is that where one, in the exercise of ordinary care is induced to enter upon and improve land because he has some written evidence of title that would naturally induce a "layman" to believe that it vested in him what is professed to pass, it would be unjust to enforce the right of another who brings no action till the end of the statutory period. Wood on Lim., sec. 159; *Avent v. Arrington,* 105 N. C., 387.

In the opinion in that case many cases are cited and quoted from, which seem to indicate that the entry must be made by the person to whom the colorable instrument is made.

In view of the fact that the ancestor to whom the colorable title was made never asserted any claim to the land under it, and these plaintiffs do not take by purchase, they evidently do not come within the reason of the rule, as stated by Mr. Wood, and approved by this Court in *Avent v. Arrington.* When they entered they knew and admit their ancestor had never entered upon the land and had never perfected his colorable title. It is different when the ancestor enters and takes possession under colorable title. At his death the possession is cast by descent upon his heirs, who may continue the possession in good faith in himself, and tack it to that of his ancestor's so as to complete the necessary statutory period. *Atwell v. Shook,* 133 N. C., 391; *Alexander v. Gibbons,* 118 N. C., 796. It is the continuity of possession which gives to the heir the benefit of the entry under color made by his ancestor.

We fail to find any authority for the position that long after the ancestor's death his heir can avail himself of a colorable title consisting of a paper writing made to his ancestor when the latter either refused or failed to claim any rights under it himself. It would seem more consistent with reason and authority that the entry should be made and claim of title first asserted by the person to whom the colorable instrument was made, and that if

he did not see fit to do so in his lifetime, no one can do it after his death under his color.

The grantee in the deed takes by purchase. Her heirs took no interest under the deed. They take by descent from her, therefore they must show a "descent cast." As their ancestor had no real title to descend they can only show it by proving her possession and that at her death it was cast upon them, for, as against one showing no title in himself, possession is title. *Shevin v. Brackett,* 36 Minn., 152; Sedg. & W. Tr. Title to Land, secs. 717-718.

"A descent cast, *where an ancestor is in possession,* gives color of title." 3 Wash. Real Prop., 168.

It must be admitted that an heir cannot inherit a color of title, for that is not a muniment of title. It is a mere shadow, a pretense of a title. Muniments of title follow the real title and descend to the heir as an incident to the estate. If there is no estate to descend, there can be no muniments. It is the descent of the possession which gives vitality to the colorable title and which, when continued long enough, constitutes it a muniment of a real title. Without the possession the colorable instrument is but worthless paper.

It has been said that color of title must purport to convey title to the claimant thereunder or to those with whom he is in privity. 1 Cyc., 1085.

This term "privity," when used in connection with color of title, does not mean privity in blood, for a privy in blood is defined to be one who derives his title to the property in question by descent. 6 Words and Phrases, 5608. That refers to a real title which can descend, and not to a mere colorable title, for until the ancestor enters and takes possession under his color he has nothing to descend, neither title or possession. Therefore, it is held in treating of color of title that "the privity spoken of exists between two successive *holders* when the latter takes under the earlier, as by descent (as, for instance, a widow under her husband, or a child under its parent) or by will or grant, as by voluntary transfer of possession." *Sherin v. Brackett, supra; Hamilton v. Wright,* 30 Iowa, 480; *Jackson v. Moore,* 7 Am. Dec., 398; Sedg. & Waite Title to Land, sec. 747-748; Wood on

Lim., sec. 271. The term privity, when used in connection with a colorable, or sham title, and not a real title, evidently means "privity of possession."

To show privity of possession, the latter occupant must enter under the prior one; *must obtain his possession* either by purchase or descent from him. Words and Phrases, 5609; *Shuffleton v. Nelson,* 22 Fed. Cases, 45-47; Sedg & Waite, sec. 747.

Warvelle in his work on Vendors, I Vol., sec. 8, p. 54, states the law very clearly as follows: "Possession under color of title for the period of the statutory limitation confers upon the holders a perfect title in law; and where one takes possession under a deed giving color of title his possession may be transferred to subsequent parties, and the possession of the different holders may be united so as to make up the statutory period. Titles acquired in this manner must, however, show connected possession and a privity of grant or descent."

The case of *Bond v. Beverly,* 152 N. C., 60, relied upon by the plaintiffs, supports the position we have taken. In that case the plaintiff claimed the land by virtue of sale in 1870 under an execution against Laurence Askew, the owner of the land. The defendant Beverly claimed under a deed from Harrell who claimed under a deed from the executors of Lawrence Askew. It was claimed that Beverly's deed was void for lack of sufficient description and was not color of title. This Court, in a very lucid opinion by *Mr. Justice Manning,* in which the facts are fully stated, held that the deed to Harrell was good color of title and that Beverly, *having been put in possession* by Harrell, could take the benefit of such color. In other words Beverly was privy in possession with Harrell. The learned Justice says: "This adverse entry occurred on 22 December, 1890, when Harrell put Beverly, the ancestor of defendants, and one Young in possession of the land and they took possession of it," and he cites a number of cases wherein privity of possession is held to exist between successive holders. It is manifest from the opinion that, if there had been no privity of possession between Harrell and Beverly, the latter could not have availed himself of the former's deed from the executors as color of title.

Another case pressed upon our attention by the learned counsel for plaintiffs is *Miller v. Davis,* 106 Mich., 303, which appears upon examination to be based upon a construction of the Michigan statutes.

Joseph St. Andre was the legal owner of the land by patent from the government. He seems to have abandoned the land and others took adverse possession of it. Louis St. Andre, an heir of Joseph, afterwards re-entered upon the land and the judge, writing the opinion, says "he could not be said to have entered without color of title."

This was purely *obiter,* and we think not an apt expression, for when Louis St. Andre re-entered he held the legal title in his person and his entry was not under color of a spurious title but under the protection of the original patent, which he had inherited from his ancestor.

We are of opinion that his Honor did not err in sustaining the motion to nonsuit and his judgment is

Affirmed.

HOKE, J., dissenting. Impressed as I am with the learned discussion of the subject in the opinion of the Court, I cannot bring my mind to the conclusion, made the basis of the decision, that in order to make a deed available as color of title, it is always necessary that there should be an actual entry thereunder by the original grantee. To constitute color of title in this State, it is required that there should be a paper writing purporting to convey or contract for the title to land, sufficiently defining its boundaries and an entry thereunder asserting ownership with a certain degree of good faith. Subject to these requirements the question of color of title is very largely one of intent and there is no reason occurring to me why an heir should not be allowed to acquire title when he enters under a deed to the ancestor and remains in the exclusive possession for the required length of time, asserting ownership under the deed. The position chiefly relied upon in the Court's opinion that there should be an entry by the ancestor grantee, under the deed, and descent cast before the heir can avail himself of the deed as color, is a doctrine asserted and applied by the courts to cases where it was necessary to join or "tack" the possession of the

ancestor to that of the heir in order to make out the length of occupation required. The courts were giving a reason for allowing one wrongdoer or disseizor to avail himself of the occupation by another and this is what the text books mean when they lay such apparent stress upon possession by the ancestor, as in the citation from Warvelle, appearing in the principal opinion, "that possession under a deed, giving color may be transferred to other parties, but in order to do this they must be purely of grant or descent." In our case, however, there was evidence to the effect that the heirs had entered, and themselves had occupied the property adversely for the required length of time, asserting ownership under the deed to their ancestor, and to my mind there is nothing to prevent the operation of the principles of color of title, a paper writing purporting to convey same and an entry thereunder asserting ownership in good faith. Such a claim of ownership would not be allowed to an absolute stranger, but by reason of privity it should be allowed to the heir. The principle contended for seems to have been applied in *Miller v. Davis,* 106 Mich., p. 300, and was directly recognized by this Court in *Bond v. Beverly,* 152 N. C., p. 57. In that well considered case, it appeared that the executors of a claimant, under order of court, had sold the land in controversy to one Harrill and made a deed to Harrill, properly and sufficiently defining the boundaries. Harrill conveyed to Beverly, the ancestor of defendant, who entered and he and those under whom he claimed occupied for sufficient length of time to mature the title, asserting ownership under these deeds. The deed from the executors to Harrill was a good and sufficient deed. That from Harrill to Beverly was void for lack of sufficient description. There was no entry on the land under this claim until Beverly, the ancestor of defendants, entered. The title of defendants by adverse occupation was established and allowed to prevail. This was not, as insisted, an application of the recognized principle that a lessor may ripen his own title by the occupation of his lessee or even his licensee, under and by virtue of the deed to Harrill, the grantee of the executors, although there had never been any entry by Harrill or anyone under whom he claimed, Beverly, who claimed under Harrill, was

allowed to avail himself of his grantor's deed as color, though the grantee himself had not entered. On the facts presented he was not an absolute stranger, but a claimant asserting ownership in good faith. While we recognize and treat claims of this character as beginning in a disseizin we know that many of them, as a matter of fact, represent the true title, the evidence of which has been lost, from accident or inattention, under the lax methods that formerly prevailed when land was cheaper and more readily obtained. Many thousands of titles in this State could not now be strictly establishel by a line of registered deeds. Fifty or sixty years back it would be difficult to show the character or circumstances of an original entry, by oral testimony. One hundred years back it would be impossible and to my mind it is an unsound principle and one fraught with much danger that deprives an heir of the privilege of availing himself of his ancestor's deed as color. I am of opinion that on the facts in evidence the cause should have been submitted to the jury.