## WALTON *v.* SIKES; *et vice versa.*

1. "Adverse claim of title," under the Civil Code (1910), § 5587, need not be evidenced by any writing.
2. Where a bona fide possessor of land under an adverse claim of title had begun to erect thereon valuable permanent improvements, and the work had so far progressed that the abandonment of the work would render the unfinished improvements useless and of no practical value, and where the completion of such improvements was necessary to preserve the same and render them useful and valuable, such possessor was not required to abandon the work upon receiving notice that another had the true title to the land; and where, after such notice, he completed the improvements and thus rendered them of use and of value,

Adverse Possession, 2 C. J. p. 127, n. 63; p. 172, n. 70; p. 173, n. 73. Appeal and Error, 4 C. J. p. 830, n. 42; p. 1029, n. 30; p. 1043, n. 38. Ejectment, 19 C. J. p. 1105, n. 48; p. 1180, n. 54.

Improvements, 31 C. J. p. 315, n. 20; p. 317, n. 34, 49; p. 322, n. 28; p. 323, n. 36; p. 325, n. 60; p. 326, n. 64; p. 329, n. 3; p. 349, n. 89; p. 350, n. 99, 3.

Pleading, 31 Cyc. p. 745, n. 20.

Statutes, 36 Cyc. p. 1174, n. 78.

he can, in an action of ejectment brought by the owner to recover the land, set off the value of the completed improvements against a recovery.

3. The verdict in favor of the defendant for the value of the improvements put upon the land up to the date she received notice of the claim of title of the plaintiff was not without evidence to support it, upon the grounds, (1) that the defendant failed to show any color of title to the premises in dispute, and (2) that the defendant was guilty of negligence in entering and erecting the improvements upon the lot involved in this case.

(a) Possession may originate by mistake, and yet the possessor who enters under "an adverse claim of title," and bona fide erects upon the land in dispute permanent improvements, may set off the value of such improvements against the land itself. Negligence, which is not so gross as to negative the bona fides of the defendant's possession, will not destroy her right to set off the value of such improvements against the value of the lot upon which they are erected.

(b) Under the facts of this case we can not say as a matter of law that the defendant was guilty of such negligence as would deprive her of this right of set-off.

(c) Where the court gives to the jury conflicting instructions, some of which are erroneous or inapplicable, and more favorable to the complaining party than he is entitled to, and one of which is correct and applicable, and the jury disregards the erroneous or inapplicable instructions and follows the correct and applicable instruction, such error does not require the grant of a new trial to such complaining party.

4. The petition set forth a cause of action; and the court did not err in overruling the demurrer of the defendant.

5. Where the plaintiff demurred to the answer of the defendant upon various grounds, and the court overruled this demurrer except as to the answer to paragraph seven of the petition, and where after that judgment the defendant amended by striking out so much of her answer as was responsive to said paragraph seven, the ruling upon the motion to strike the answer does not furnish to the defendant any ground of exception.

6. The contention that the verdict in favor of the plaintiff is without evidence to support it, and therefore contrary to law, because the plaintiff had not proved title to the lot in dispute, is without merit, as the evidence demanded a finding that the plaintiff had title, and that the defendant had no title thereto.

7. The court erred in charging the jury as follows: "One who enters upon land under a conveyance from one not in possession, and, so far as appears, not having any color of title, enters and improves the premises at his peril; the true owner is under no obligation to account to him for taxes paid or for the cost of improvements over and above the mesne profits accruing." The principle announced in *Tripp* v. *Fausett*, 94 *Ga.* 330 (21 S. E. 572), is not applicable to a case which comes within § 5587, supra.

8. It was error to charge the jury as follows: "By claim of title is

meant some color of title. It does not mean a mere belief that he has title."

9. It was error to charge as follows: "One in possession can not set off against the claim of the true owner any repairs or improvements which have been made after knowledge of the claim of the true owner, except such repairs as are necessary to preserve the property in its present state."

10. It was error to charge that the defendant must show what improvements "were made before he knew of the claim of the true owner, and what were made after such knowledge."

11. The court, in requiring the jury to return a special verdict, propounded this question: "What is the value of the permanent improvements, bona fide placed on said lot by the defendant on the date on which the defendant had notice that Mrs. Walton, the plaintiff, claimed title to the lot?" The court here erred in confining the jury, in fixing the value of the improvements, to the date named.

12. It was error to refuse a request to charge the jury that under the law (§ 5587) "the good faith of the purchaser or the defendant who has possession is not necessarily destroyed by error of judgment or the failure to exercise all possible diligence."

13. It was error to refuse a request to charge the jury that "It is neither legally nor logically necessary that the claim of title should be founded upon a writing."

14. It was error to refuse a request to instruct the jury as follows: "The fact that the plaintiff may have had a title deed of record at the time defendant took possession of the lot does not necessarily show lack of good faith on the part of the defendant."

15. It is never reversible error for the court to refuse to direct a verdict. Besides, it would have been error for the court to direct a verdict in favor of the defendant under the pleadings and proof.

16. Other assignments of error in the defendant's motion do not require the grant of a new trial.

Nos. 6033, 6034. DECEMBER 13, 1927.
REHEARING DENIED JANUARY 13, 1928.

Complaint for land. Before Judge Hutcheson. DeKalb superior court. April 9, 1927.

*W. O. Wilson* and *Spence & Spence,* for plaintiff.

*Underwood, Haas & Gambrell,* for defendant.

HINES, J. 1. The most important question involved in this case is this: Must the "adverse claim of title," specified in the Civil Code (1910), § 5587, be founded upon some written evidence of title? Counsel for the plaintiff insists that such claim of title must rest upon some writing which upon its face purports to convey the land to the party asserting such claim of title. The argument in support of this contention is, that prior to the act of December 21, 1897, (§ 5587), the value of permanent improve-

ments could be a set-off only against mesne profits, and then only when made by one bona fide in possession of land under a claim of right (Civil Code (1910), § 4347); that when the legislature by the act of 1897 extended the right of set-off of the value of permanent improvements, so as to permit the set-off against the land itself, it dropped the language, "under claim of right," and inserted the language, "under adverse claim of title;" and that by this change of language the legislature, in enacting the above act, required something more than a mere claim of right, and meant by the language, "adverse claim of title," a title which, although invalid, was bottomed upon some writing or color of title. We do not think this contention and the argument upon which it is based are sound. The act of 1897 is remedial, and intended to give effect to the strong equity which arises in favor of a bona fide possessor by the erection by him of permanent improvements of value upon land which turns out to belong to another. So it should be given a liberal construction. Adverse claim of title under this act is the entry upon and the occupancy of land by one with the intent to hold it as his own against the world, irrespective of any color of right or title as a foundation for his claim. Crowder v. Tenn. Coal &c. Co., 162 Ala. 151 (50 So. 230, 136 Am. St. R. 17). Color of title is not synonymous with claim of title. They are not one and the same thing. To constitute color of title there must be a paper title to give color to the adverse possession, whereas a claim of title may be shown wholly by parol. Barrett v. Brewer, 153 N. C. 547 (69 S. E. 614, 42 L. R. A. (N. S.) 403); Hamilton v. Wright, 30 Iowa, 480.

To constitute an adverse possession under this statute, it is not necessary that the party must have taken and held possession under color of title. It is sufficient if such possession was taken and held under a claim of title. Hamilton v. Wright, supra; *Shiels* v. *Roberts,* 64 *Ga.* 370 (3); *Waxelbaum* v. *Gunn,* 150 *Ga.* 408 (104 S. E. 216). Adverse possession which, if continued for a period of twenty years or longer, would ripen into a title by prescription is sufficient under this statute to authorize a set-off of permanent improvements of value against the land itself. Such possession, though originating in mistake, will be sufficient. *Waxelbaum* v. *Gunn,* supra. If the claim of title is under color of title, the possession must not be the result of mistake. *Riley* v. *Griffin,*

16 *Ga.* 141 (60 Am. D. 726) ; *Keel* v. *Pace,* 20 *Ga.* 190; *Howard* v. *Reedy,* 29 *Ga.* 152 (74 Am. D. 58) ; *LaRoche* v. *Falligant,* 130 *Ga.* 596 (61 S. E. 465). This is so far the reason that color of· title must· embrace and sufficiently describe the land to which title by prescription is asserted. So if the possessor by mistake takes possession of land not embraced in his color of title, he will not acquire title by prescription by reason of possession for seven years, while such possession, if continued for twenty years or longer, will ripen into a good prescriptive title from possession alone under claim of title. So we are of the opinion that under the act of 1897, "adverse claim of title" is not required to be evidenced by any writing. The cases of *Tripp* v. *Fausett,* 94 *Ga.* 330 (supra), and *Dudley* v. *Johnson,* 102 *Ga.* 1 (29 S. E. 50), were decided prior to the act of 1897, and dealt with the law as to set-off of improvements as it existed ˙prior to the passage of that act. It was the intention of the legislature in enacting this statute that those who bona fide go upon land, and bona fide ˙erect thereon permanent improvements, should not be ejected therefrom without other compensation than the mesne profits of the land, where such mesne profits are less in value than the permanent improvements. *Mills* v. *Geer,* 111 *Ga.* 275 (36 S. E. 673, 52 L. R. A. 934) ; *Hicks* v. *Webb,* 127 *Ga.* 170 (56 S. E. 307) ; *Moale* v. *Rives,* 146 *Ga.* 425 (91 S. E. 420).

2. The present complaint was brought on August 15, 1925. At that time the improvements placed upon the lot in dispute by the defendant had been completed. The plaintiff, however, contends that before the completion of these improvements, and before they were more than half completed, she notified the defendant that she was the owner of the lot in dispute. On the other hand the defendant contends that, when she was notified by the plaintiff that the latter owned this lot, these improvements had been practically completed, and lacked only the hanging of the windows and doors to complete the same. The plaintiff insists that the defendant, if otherwise entitled to do so, can not offset any improvements put upon this lot after she got notice of the plaintiff's title thereto, although what was done thereafter consisted only of completing the dwelling which the defendant had begun to erect on this lot. On the other hand, the defendant insists that she would be entitled to recover the value of the dwell-

ing when completed, as what she did towards its completion, after receiving notice of the plaintiff's claim of title to the lot, was necessary to preserve the same and make it habitable. So the question arises in this case whether a defendant in ejectment, who takes possession of a vacant lot under an adverse claim of title, and begins to erect thereon a large and valuable dwelling, the erection of which has progressed to a state of half-completion, or to a greater extent, is justified in completing such dwelling, and is entitled to set off the value thereof against the lot in controversy. It has been held by this court that where a defendant enters upon land in good faith under an adverse claim of title, and, after suit is brought against him by one who has actual title to the property, erects improvements upon the land, it can not be held that he has "bona fide placed improvements thereon," so as to entitle him to set off the value of such improvements against the land. *Richards* v. *Edwardy,* 138 *Ga.* 690 (76 S. E. 64) ; *Hinesley* v. *Stewart,* 139 *Ga.* 7 (76 S. E. 385) ; *Hall* v. *Collier,* 146 *Ga.* 815 (92 S. E. 536). In the cases cited the improvements were erected pending litigation brought by the true owner to recover from the defendant the premises upon which the improvements were made, and after the defendants were fully informed of the nature and character of the titles and claims of the plaintiffs in these suits. So it is now well settled that the value of improvements placed upon land by the defendant pending an action brought by another to recover it from him can not be set off against the land itself under section 5587, supra.

But it has not been decided by this court that where a bona fide possessor of land under an adverse claim of title has begun to erect thereon valuable permanent improvements, and the erection thereof has progressed so far that the abandonment of the work would render the unfinished improvements useless and of no practical value, and where the completion of such improvements is necessary to preserve the same and render them useful and of value, the defendant must, upon notice that another has or claims to have title to the lot so improved, abandon the same in their unfinished condition; and that if after such notice he completes the improvements and thus renders them of use and value, he can not set off against the land the value of the completed improvements, but can only set off against the land the value of the improvements

in the condition in which they were when he received such notice. We do not think that the defendant in these circumstances was required to abandon the unfinished improvement, when its completion was necessary in order to preserve it and make it useful and valuable. Such a case is different from one where a defendant, after suit is brought by the true owner against him to recover the land, then puts thereon improvements. When it becomes necessary to complete improvements which have been begun and are largely completed, the defendant should be permitted to complete the same, and to set off their value against the land improved. An unfinished dwelling might be of little value. Certainly its value would be largely destroyed if not completed. So it would seem to be equitable and just to permit the defendant to complete such dwelling, so as to preserve it, and render it habitable and valuable. This would not be inequitable and unjust towards the owner of the unimproved lot. If he did not wish to pay the defendant for the value of the completed dwelling, he could decline to do so, and upon the failure of the defendant to pay him the value of the lot, he could have the property sold, receive the value of the vacant lot, and let the defendant get the excess of the proceeds of the sale over and above the value of the lot. This seems to be the wiser policy; and one which would be likely to produce less injury to the defendant and to the plaintiff.

3. In her bill of exceptions the plaintiff excepts to the overruling of her motion for new trial. This is the only assignment of error asserted by the plaintiff. This makes it necessary for us to pass upon the grounds of her motion. In the first special ground the plaintiff alleges that the verdict is contrary to the evidence, inasmuch as the defendant failed to show that she had any color of title to the lot of the plaintiff upon which she erected the improvements, the value of which she seeks to set off against the lot itself. In view of the ruling in the first division of this opinion, this ground is without merit. In the next ground the plaintiff asserts that the defendant was guilty of gross negligence in erecting these improvements upon her lot. She bases this claim of negligence upon the facts that the defendant purchased under a contract of sale the lot adjoining her lot, and thereafter received a deed thereto, but failed to read the contract of sale or her deed, and made no effort to locate by measurement or in any other way

the lot which she so purchased; and that in consequence of these facts the defendant was guilty of gross negligence, and as a consequence can not avail herself of the equitable defense of set-off of the improvements placed upon plaintiff's lot. In other words, the plaintiff asserts that by reason of her negligence the defendant has no standing in a court of equity for the relief sought in her equitable plea of set-off. We do not think that from these facts the verdict is without evidence to support it, and therefore contrary to law. Plaintiff owned lot No. 7 of the McGrath subdivision. The vendor of the defendant owned lot No. 8 of this subdivision. The two lots adjoined each other. Pending the negotiations between the defendant and her vendor, which finally led to the purchase of lot No. 8 by the defendant, the vendor pointed out to the defendant lot No. 7 as the lot which she was selling to the defendant. She pointed out the corners of lot No. 7, these corners being marked by new iron pins and wooden stakes, and informed the defendant that these were the corners of the lot which she was selling. The defendant was wholly unacquainted with the lots in the McGrath subdivision. If the defendant had read her contract of sale and her deed to lot No. 8, she could not have discovered therefrom that her vendor had pointed out to her lot No. 7 as the one she owned and was selling, when in fact she only owned lot No. 8 which was specified and embraced in the contract of purchase and in the deed which the defendant received from her vendor. The other alleged act of negligence on the part of the defendant is that her deed furnished data from which she could have located her lot by measurement, and that she failed to do so.

The right of the defendant to set off these improvements on lot No. 7 against the lot itself, under the act of 1897, does not depend upon whether the defendant was negligent in locating her lot and in making these improvements on the adjoining lot, but depends upon the question whether the defendant was bona fide in possession under adverse claim of title of the lot upon which the improvements were erected. The act of 1897 can not "be construed to limit the right to claim its benefits to a purchaser who has 'made every possible search to discover whether or not his title was bad.' Under the act, the good faith of the purchaser, or the defendant who has possession, is not necessarily destroyed

by error of judgment or the failure to exercise all possible diligence." *Norris* v. *Richardson*, 151 *Ga.* 31 (105 S. E. 493). We have seen that possession may originate by mistake, and that the possessor may nevertheless have "an adverse claim of title." It is true that negligence may be so gross as to negative the idea of good faith on the part of the possessor; but negligence which does not negative the bona fides of the defendant's possession will not destroy his right to set off the value of improvements against the value of the lot upon which they are erected. If the jury should find that the defendant made these improvements bona fide under an adverse claim of title, then she would not be deprived of the right to set off the value of these improvements against the lot, although she was guilty of negligence in locating the lot which she purchased. Under the facts of this case we can not say that the defendant was guilty of such negligence as negatives the bona fides of her possession.

The court charged the jury, "that one who enters upon land under a conveyance from one not in possession, and, so far as appears, not having any color of title, enters and improves the premises at his peril; the true owner is under no obligation to account to him for taxes paid, or for the costs of improvements over and above the mesne profits accruing from the land during the period of his occupation. . . That in order for one in possession of land to set off the value of the improvements when an action has been brought for the recovery of the land, it is necessary not only that he entered into the possession bona fide, but also that he had some adverse claim of title to the land. By claim of title is meant some color of title; that is, he must have purchased that particular piece of land, and must have a title of some kind to the land in question. It does not mean a mere belief that he has title. . . . I charge you . . that a trespasser can not set off improvements in an action brought for mesne profits, except when the value of the premises has been increased by the repairs or improvements which have been made. In that case the jury may take into consideration the improvements or repairs, and diminish the profits by that amount, but not below the sum which the premises would have been worth without such improvements or repairs. . . I charge you . . that it is not necessary that a defendant in an ejectment suit, in order to claim the benefit

of set off in an ejectment suit, to own title or a paper title, or what purports to be a paper title." The plaintiff assigns error upon the foregoing charges, upon the ground that they were directly in conflict with each other, and afforded the jury no rule of law upon which they could base a verdict. This criticism is to some extent well founded. The principle announced in the second sentence of the quoted instructions is in conflict with the last instruction to which the plaintiff excepts; but as the jury disregarded all of these instructions except the last, which was correct, this error does not require the grant to the plaintiff of a new trial.

The court charged the jury as follows: "If a person is found to be openly occupying land, it will be presumed, until the contrary appears, that the occupancy is bona fide under some claim of right. Possession, gentlemen, is a fact from which the law raises a prima facie presumption of title. I charge you . . that when an open, notorious, continuous, exclusive possession is shown to have existed, it is to be presumed, until the contrary appears, that it was adverse and under a bona fide claim of right."

The plaintiff contends that these instructions were erroneous, because neither party was seeking to set up prescriptive title, and because it appeared from undisputed testimony that the defendant went into possession of the plaintiff's lot under a misapprehension, and under such facts no presumption of ownership would exist. We do not think that the instructions were erroneous for any of the reasons assigned. While prescriptive title was not involved in this controversy, the elements of possession which would ripen into such title, if the possession continued long enough, were involved; and the court did not err in giving these instructions under this theory.

4. The defendant demurred to the petition, upon the ground that it set forth no cause of action; and specially to paragraph 5 thereof, for the reason that it did not show upon its face a common grantor of the property in litigation.. The trial judge overruled the demurrer; and the defendant assigns error. In the petition the plaintiff alleges, that "she is the owner of and claims title to" a described tract of land, "known as lot #7 of the Kate McGrath property;" that the defendant is in possession of this land by reason of facts further stated in the petition, and claims

title by mesne conveyances from W. A. Gardner, as shown by an abstract of title attached, which begins with a deed from J. Cheston King, by McCurdy, sheriff, to W. A. Gardner, which conveys lots 7 and 8 of the McGrath property; that the defendant claims title under a deed from Mrs. Courtney, which conveys lot No. 8 of the McGrath property; that plaintiff and defendant claim title under W. A. Gardner as a common grantor; that the defendant, by an error or through negligence, went into the possession of lot No. 7, which was not the property she purchased from Mrs. Courtney; and that she refuses to deliver to plaintiff possession of the premises in dispute. Thus the plaintiff set out a cause of action which would entitle her to recover, upon proof of the facts as alleged. Taking the allegations together with the attached abstract of the respective titles of the parties, the complaint shows that both parties claimed title under J. Cheston King, who owned both lots 7 and 8 of the McGrath property. These lots were sold by the sheriff under a judgment and execution against King, and were bought in by Gardner. The plaintiff claims title to lot 7 under mesne conveyances from the said Gardner, and the defendant claims title to lot 8 under like conveyances from the same source. Thus the petition shows a common source of title. It follows that the special ground of demurrer is not well taken. If this ground had been urged against paragraph six, which alleges that the parties claim title under W. A. Gardner as a common grantor, another question would be presented for decision. So we are of the opinion that the court did not err in overruling the demurrer.

5. The plaintiff demurred to the answer of the defendant, upon various grounds. The court overruled this demurrer, except in one particular, to which we shall presently refer. The plaintiff does not except to that judgment in its entirety. In the seventh paragraph the plaintiff alleges that Mrs. Sikes, on October 6, 1924, purchased lot No. 8 of the McGrath property from Mrs. June Courtney; but by an error or through negligence she went into possession of lot No. 7, to which plaintiff has title, lot 8 lying next to and adjoining the property of the plaintiff. In her answer the defendant alleged that for want of sufficient information she could neither admit nor deny the allegations of this paragraph, and she required strict proof thereof. Plaintiff demurred to this

answer, upon the ground that it was evasive and insufficient. The court sustained this ground of the demurrer and struck the answer to this paragraph, with leave to amend. Thereupon the defendant amended her answer to meet the objection of the plaintiff. Without determining whether the original answer was sufficient or not, the defendant can not now set up that the trial judge was wrong in holding that it was evasive and insufficient. She submitted to the ruling that her answer was defective without amendment, and amended to meet the objection which would otherwise result in dismissing her answer as to this paragraph. In these circumstances she will not be heard to say that the amendment was not necessary. *Glover* v. *Savannah &c. Ry. Co.*, 107 *Ga.* 34 (32 S. E. 876) ; *Hamer* v. *White*, 110 *Ga.* 300 (34 S. E. 1001) ; *Crawford* v. *Roney*, 126 *Ga.* 763 (55 S. E. 499) ; *Southern Cement Stone Co.* v. *Logan Coal &c. Co.*, 136 *Ga.* 475 (71 S. E. 915) ; *Adams* v. *Georgia Railway &c. Co.*, 142 *Ga.* 497 (83 S. E. 131) ; *Lavenden* v. *Haseman*, 157 *Ga.* 275 (121 S. E. 646). This ruling does not furnish any ground of exception, for the further reason that the defendant by her amendment struck out entirely her original answer to this paragraph.

6. The defendant insists that the verdict is without evidence to support it, and therefore contrary to the law; that the plaintiff has not proved title to the lot in dispute; and that for this reason she has not made a case which entitles her to relief. This contention is without merit. Both parties claim under J. Cheston King as a common grantor. Both lots seven and eight were sold by the sheriff under an execution against King as his property. As both parties claim title under King, it was unnecessary for the plaintiff to show title back of King, for two reasons. In the first place, "where both parties claim under a common grantor, it is not necessary to show title back of such common grantor." Civil Code (1910), § 5582. In the second place, in all controversies in the courts of this State, the purchaser at a sheriff's sale is not required to show title-deeds back of his purchase, unless it be necessary for his case to show good title in the person whose interest he purchased. Civil Code (1910), § 6052. So as both parties claim under a common grantor, both under a sheriff's sale, it was not necessary for the plaintiff to show title back of J. Cheston King. Plaintiff introduced mesne conveyances of title from King

into herself to lot 7 of the McGrath property. She likewise introduced a sheriff's deed to W. A. Gardner to lots 7 and 8 of the McGrath property. These lots were sold under an execution against J. Cheston King. Plaintiff introduced mesne conveyances from Gardner into the defendant to lot 8. Under this proof the plaintiff showed title to·herself to the premises in dispute, and title in the defendant to lot 8. Under this proof the plaintiff clearly made out title to lot 7, and the evidence thus authorized a finding that she had title to this lot. So the contention that the plaintiff failed to prove title in herself to this lot is without merit.

7.  The other headnotes do not require elaboration.

*Judgment affirmed in No. 6033, and reversed in No. 6034. All the Justices concur.*